UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONDRA RAMIREZ,<br><br>    Plaintiff,<br><br>       v.<br><br>BAXTER CREDIT UNION,<br><br>    Defendant. | Case No. 16-cv-03765-SI<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 23 |

On January 6, 2017, the Court held a hearing on defendant's motion to dismiss. For the reasons set forth below, the Court GRANTS defendant's motion, in part, with leave to amend.

**BACKGROUND**

Plaintiff Sondra Ramirez ("Ramirez") filed this class action lawsuit on July 5, 2016, seeking damages and injunctive relief against defendant Baxter Credit Union ("BCU") in connection with BCU's overdraft charge policy. Compl. (Dkt. No. 1). Ramirez sues BCU, alleging the following causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment/restitution; (4) money had and received; (5) violation of the Electronic Fund Transfer Act ("EFTA"); and (6) violation of California's Unfair Competition Law ("UCL"). Compl. ¶¶ 51-90.

During the class period, Ramirez was a BCU member. *Id.* ¶ 5. When Ramirez opened her BCU checking account, she affirmatively opted in to BCU's overdraft protection, which BCU refers to as its "Courtesy Payment service." *See id.* ¶¶ 22, 33; Def. Request for Judicial Notice

("RJN"), Ex. 1 (Dkt. No. 39) at 3-4.[1] Ramirez's Membership Enrollment Form included a federally mandated, segregated opt-in provision with the heading "What You Need to Know About Overdraft Fees." Def. RJN, Ex. 1 (Dkt. No. 39) at 4. The opt-in states that "[a]n <u>overdraft</u> occurs when you do not have enough money in your account to cover a transaction, but [BCU] pay[s] it anyway." *Id.* (emphasis in original). It further describes the credit union's Courtesy Payment service, explaining that BCU automatically authorizes and pays overdrafts for certain transactions, including checks and automatic bill payments. *Id.* The opt-in notes that BCU "does <u>not</u> authorize and pay overdrafts for" ATM transactions and one-time debit card transactions, unless the applicant opts in immediately below. *Id.* (emphasis in original). The opt-in describes the amount of fees BCU charges for overdrafts ($29 per overdraft), but does not describe how the credit union calculates a member's balance for purposes of determining whether she has overdrafted her account. *See id.*

Ramirez and her joint applicant opted in to the Courtesy Payment service for ATM and one-time debit card transactions, and signed the Membership Enrollment Form below the opt-in provision. *Id.* In the signature block, the form states that "[b]y signing below you acknowledge that you have received and agreed to the terms and conditions contained on both sides of this form and in the Deposit Account Agreement, which includes . . . Fee disclosures . . . ." *Id.* Ramirez does not reference the Deposit Account Agreement in her complaint.

Ramirez alleges that the overdraft opt-in does not accurately describe BCU's actual

---

[1] BCU requests that the Court take judicial notice of: (1) Ramirez's Membership Enrollment Form; (2) the Deposit Account Agreement; and (3) a recent federal district court opinion. Def. RJN (Dkt. No. 24), Exs. 1-3. A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. . . . The defendant may offer such a document . . . ." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Ninth Circuit has "extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citations omitted). Further, a court can "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Ranchiera Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal citations omitted). The Court finds these items appropriate for its consideration, and, in the absence of any opposition, GRANTS BCU's request.

2

overdraft service. Compl. ¶ 22. She alleges that on January 16, 2016, she had a positive account balance of $347.86 in her checking account. *Id.* ¶ 33. When Ramirez bought something for $60.97 with her debit card, BCU assessed an overdraft fee against her account. *Id.* Plaintiff alleges that this is but one example of an ongoing course of conduct. *See id.* ¶¶ 33, 36.

This dispute, and others like it, hinge on how a financial institution calculates accountholders' account balances when determining whether an overdraft has occurred, and whether the institution adequately informs accountholders of these overdraft practices. A checking account has two balances: a "ledger" balance (or "actual" balance), which represents the official account balance at any given time, and an "available" balance, which represents the funds immediately available to the accountholder. *See id.* ¶ 24. Sometimes these two balances are the same, but often they are not. For instance, when an accountholder deposits a check, banks generally make only a portion of that check available immediately, with the remainder held for a certain time period while the funds clear. *See id.* The account's ledger balance might reflect the full amount of the deposit right away, but the available balance would include only a portion of that check deposit until the check clears. Or, as another example, when an accountholder uses his or her debit card to make a purchase in a store or online, the merchant might place a "credit hold" on those funds, with the actual debit against the account occurring one or two days later when the transaction settles. *See id.* The account's ledger balance would not reflect such a transaction until it settles, but the available balance would reflect the transaction immediately.

Ramirez alleges that, based on the opt-in language in her Membership Enrollment Form, BCU promised to use a member's ledger balance to determine when an overdraft occurs, when in actuality, the credit union uses a member's available balance. *Id.* ¶¶ 23-24. As a result, an accountholder may inadvertently overdraft his or her account by relying on the ledger balance. Ramirez alleges that by misleading its members in this manner, BCU has violated the EFTA provisions governing overdrafts and breached the overdraft opt-in contract. Defendant moves to dismiss the complaint in its entirety for failure to state a claim.

/ / / / /

/ / / / /

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings, without thereby transforming the motion into a motion for summary judgment. *Id.* at 688-89. If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

/ / / / /

4

**DISCUSSION**

Plaintiff alleges six causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment/restitution; (4) money had and received; (5) violation of the EFTA (Regulation E); and (6) violation of California's Unfair Competition Law. Defendant moves to dismiss the complaint in its entirety. For the reasons set forth below, the Court GRANTS defendant's motion in part, DENIES defendant's motion in part, and defers ruling on plaintiff's Unfair Competition claim.

**I.   Breach of Contract**

Plaintiff's first claim is for breach of contract. Plaintiff alleges that defendant breached the opt-in agreement by charging overdraft fees based on her available account balance. Defendant argues that plaintiff's contract claim is based solely on the opt-in form and ignores the terms of the Deposit Account Agreement that Ramirez assented to by signing the Membership Enrollment Form. *See* Mot. (Dkt. No. 23) at 10:5-6. Defendant argues that plaintiff's contract claim fails because (1) the Courtesy Payment overdraft opt-in form cannot be read in isolation from the Deposit Account Agreement, and (2) the Deposit Account Agreement "plainly" states that overdraft fees will be assessed on a member's "available balance."[2] *Id.* at 10:11-15. Plaintiff counters that her breach of contract claim is based solely on the opt-in form, an entirely separate contract, and does not incorporate the terms of the Deposit Account Agreement.

**A.   The Operative Contract**

Under California law, when several contracts relating to the same subject matter are executed by the same parties, they are generally considered together as if contained in a single document.[3] *Versaci v. Superior Court*, 127 Cal. App. 4th 805, 814 (4th Dist. 2005) (citation

---

[2] Defense counsel conceded at oral argument that nowhere in the Deposit Account Agreement is "available balance" defined.

[3] Defendant argues that Illinois law applies to plaintiff's state law claims because of a choice-of-law provision contained in the Deposit Account Agreement. The Deposit Account Agreement states that "membership, accounts and services are . . . governed by the applicable law

5

omitted); *see also* Cal. Civ. Code § 1642 ("Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."). While the contract need not explicitly state that it incorporates another document, the reference must be "clear and unequivocal." *Versaci*, 127 Cal. App. 4th at 814 (quoting *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997)). Illinois law is in accord. In Illinois, "where different instruments are executed together as part of one transaction or agreement, they are to be read together and construed as constituting but a single instrument." *Pecora v. Szabo*, 94 Ill. App. 3d 57, 63 (2d Dist. 1981) (citation omitted).

Plaintiff argues that the opt-in form is a standalone agreement, and must be analyzed in isolation. While other district courts have found that the federally mandated opt-in form is a contract, on these facts, the Court sees no compelling reason to construe the agreements separately. *See Chambers v. NASA Fed. Credit Union*, No. 15-02013-JDB, 2016 WL 6155930 (D.D.C. Oct. 21, 2016). In *Chambers*, for example, the court agreed that a similar "federally required [overdraft] opt-in agreement [was] itself a contract." *Id*. at *5. However, the court gave no indication that the opt-in agreement was to be read in isolation. Indeed, the court analyzed both the opt-in agreement and the plaintiff's account agreement, ultimately dismissing the plaintiff's breach of contract claim because "the relevant agreements unambiguously convey that the Credit Union will impose overdraft fees on debit transactions that overdraw the <u>available</u> balance." *Id*. at *7 (emphasis in original).

For purposes of plaintiff's breach of contract claim, based on the allegations in the complaint, the Court finds that the opt-in form must be construed together with the Deposit Account Agreement. Plaintiff's complaint focuses on the opt-in form as an independent agreement and makes no mention of the Deposit Account Agreement. However, plaintiff signed

---

of the state in which the branch or service center where you opened your account is located, or if you opened your account by mail, or our services that can be accessed online, the law of the State of Illinois . . . ." Def. RJN, Ex. 2 at 22-23. Plaintiff applies California law, arguing that because her claim focuses on the opt-in form as a distinct agreement, the Illinois choice-of-law provision does not apply. Opp'n at 28 n.6. The Court defers ruling on the choice-of-law issue at this time because, although it appears she did so online, the Court does not know how or where plaintiff opened her account.

the Membership Enrollment Form directly beneath the Courtesy Payment opt-in provision. The form states that "[b]y signing below you acknowledge that you have received and agreed to the terms and conditions contained on both sides of this form and in the Deposit Account Agreement, which includes Truth-in-Savings and Fee disclosures . . . ." Def. RJN, Ex. 1 at 4. Plaintiff pleads no facts regarding the Deposit Account Agreement or her execution of the Membership Enrollment Form. On these facts, the Court is left only with an executed enrollment form that expressly incorporates the terms of the Deposit Account Agreement. Accordingly, as pled, BCU's opt-in form must be read in conjunction with its Deposit Account Agreement in order to fully comprehend the terms of the Courtesy Payment service.

### B.     Breach of Contract

The elements of a breach of contract claim under California and Illinois law are the same. The elements of a cause of action for breach of contract in either state are: (1) the existence of a valid contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to the plaintiff. *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011); *accord Catania v. Local 4250/5050 of Communications Workers of Am.*, 359 Ill. App. 3d 718, 724 (1st Dist. 2005).

Defendant argues that the Court should dismiss plaintiff's breach of contract claim because, under the Deposit Account Agreement, it committed no breach. Mot. at 13-15. Plaintiff briefly argues that, even reading the opt-in form and account agreement together, the two do not adequately explain what a customer's "available balance" is with respect to overdrafts. Opp'n (Dkt. No. 27) at 24-25. However, plaintiff's complaint, the operative document at this stage, makes no allegations regarding the sufficiency of the Deposit Account Agreement with respect to overdrafts. Plaintiff has not adequately alleged a breach of the parties' contract, which consists of the Membership Enrollment Form (including the opt-in form) and the Deposit Account Agreement. The Court makes no findings at this stage regarding the purported ambiguity (or lack thereof) of the Deposit Account Agreement as read in conjunction with the overdraft opt-in form. Accordingly, the Court DISMISSES plaintiff's breach of contract claim, with leave to amend.

**II.     Breach of Covenant of Good Faith and Fair Dealing**

Plaintiff's second cause of action alleges that BCU breached the implied covenant of good faith and fair dealing when BCU assessed overdraft fees while there was a sufficient ledger balance to cover the transaction, failed to provide an accurate description of its overdraft program for nonrecurring debit and ATM transactions, and failed to give customers an informed choice as to whether to opt in to the overdraft program for ATM and nonrecurring debit card transactions. Compl. ¶ 65. BCU argues that this claim should be dismissed because the covenant is not an independent cause of action under Illinois law. Mot. at 26:11-13.

"[W]hile Illinois contracts contain an implied obligation to act in good faith, this obligation does not provide a party with a separate, independent cause of action." *Belsky v. Field Imports, Inc.*, No. 13 C 1758, 2013 WL 5819232, at *6 (N.D. Ill. Oct. 29, 2013); s*ee also Zeidler v. A & W Rests., Inc.*, 301 F.3d 572, 575 (7th Cir. 2002) ("[W]e note that the district court correctly dismissed on the pleadings [plaintiffs'] remaining claim that [defendant] breached an independent covenant of good faith and fair dealing. The covenant is only an aid to interpretation, not a source of contractual duties or liability under Illinois law."). Similarly, California law implies a covenant of good faith and fair dealing in every contract. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1 (1995). "The implied covenant imposes certain obligations on contracting parties as a matter of law—specifically, that they will discharge their contractual obligations fairly and in good faith." *Mundy v. Household Fin. Corp.*, 885 F.2d 542, 544 (9th Cir. 1989). A key purpose of the covenant is "to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*. [Citation]. The covenant thus cannot be endowed with an existence independent of its contractual underpinnings." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000) (emphasis in original) (internal citations and quotation marks omitted).

As set forth above, plaintiff has failed to state a claim for breach of contract. Plaintiff's claim for breach of the implied covenant of good faith and fair dealing simply restates similar allegations to her breach of contract claim. *See, e.g.*, *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (2d Dist. 1990) (citation and internal quotation marks omitted) ("A

8

breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself . . . ."). Plaintiff's allegations of bad faith on the part of BCU are conclusory. *See* Compl. ¶ 65. As such, plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing. The Court GRANTS defendant's motion to dismiss plaintiff's second cause of action, with leave to amend.

### III. Unjust Enrichment

Plaintiff's third cause of action is for unjust enrichment. Plaintiff alleges that BCU assessed erroneous overdraft fees, and that she thus conferred an undeserved benefit on BCU. Compl. ¶ 70. Defendant counters that plaintiff's claim should be dismissed because plaintiff cannot bring an unjust enrichment claim where the parties have an enforceable express contract. Mot. at 27:1-3.

In both California and Illinois, the theory of unjust enrichment is inapplicable where there is an enforceable contract. "Unjust enrichment is 'not a cause of action . . . or even a remedy, but rather a principle, underlying various legal doctrines and remedies. It is synonymous with restitution.'" *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (1st Dist. 2004) (citing *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003)). "Thus, unjust enrichment is not a stand-alone claim under California law; it is a fall-back theory that would come into play only in the event of a finding of liability on some other non-contractual claim." *Vicuna v. Alexia Foods, Inc.*, No. C 11–6119 PJH, 2012 WL 1497507, at *3 (N.D. Cal. Apr. 27, 2012). Similarly, in Illinois, "[o]rdinarily, the remedy of unjust enrichment based on a quasi-contract is not available when an express contract exists concerning the same subject matter." *C. Szabo Contracting, Inc. v. Lorig Constr. Co.*, 19 N.E.3d 638, 645 (Ill. App. Ct. 2014). The theory of unjust enrichment "is inapplicable when an express contract, oral or written, governs the parties' relationship." *Chicago Title Ins. Co. v. Teachers' Retirement System of State of Ill.*, 7 N.E.3d 19, 24 (Ill. App. 2014). "However, while a claim for restitution is inconsistent and incompatible with a related claim for breach of contract or a claim in tort, at the pleading stage, a plaintiff is allowed to assert inconsistent theories of recovery." *Vicuna*, 2012 WL 1497507, at *3; *but see Guinn v. Hoskins*

*Chevrolet*, 361 Ill. App. 3d 575, 604 (1st Dist. 2005) (citation and internal quotation marks omitted) ("[W]hile a plaintiff may plead breach of contract in one count and unjust enrichment [in another], it may not include allegations of an express contract which governs the relationship of the parties, in the count[] for unjust enrichment.").

At the pleading stage, plaintiff's unjust enrichment claim is an alternative theory of recovery to her breach of contract claim. *See Rutherford Holdings, LLC v. Plaza Del Ray*, 223 Cal. App. 4th 221, 231 (6th Dist. 2014). However, throughout plaintiff's complaint, she refers to the "Opt-in Agreement" as a binding agreement, the terns of which govern the bank's assessment of overdraft fees. In her unjust enrichment claim, Ramirez references the practice of unfair or inadequate overdraft disclosures. Further, Ramirez incorporates all preceding allegations in this claim, which include her theory that the parties had a valid contract and that BCU violated the agreement. Dismissal of this count is appropriate. *See Guinn*, 361 Ill. App. at 604-05. Accordingly, the Court GRANTS defendant's motion to dismiss plaintiff's third cause of action, with leave to amend.

## IV. Money Had and Received

Plaintiff's fourth cause of action is for money had and received. Plaintiff alleges that defendant has in its possession money which, in equity, belongs to plaintiff and other class members and should be refunded. Compl. ¶ 73. Defendant counters that plaintiff's claim for money had and received should be dismissed because it rises and falls with plaintiff's specific causes of action. Mot. at 27:16-17.

In California, "[a]n action for money had and received aims to recover money paid on a contract whose consideration has failed." *Bhari Info. Tech. Sys. Pvt., Ltd. v. Allied Boston Bank Inc.*, No. C 05-01223 SI, 2005 WL 3481473, at *4 (N.D. Cal. Dec. 20, 2005) (citing *Bank of Am. Nat'l Trust and Savings Ass'n v. Hayden*, 231 F.2d 595, 601 (9th Cir. 1956)). "The elements of a claim for money had and received in California are: (1) the defendant received money that was intended to be used for the benefit of the plaintiff; (2) the money was not used for the benefit of the plaintiff; and (3) the defendant has not given the money to the plaintiff." *Gilbert v. Chase*

1   *Home Fin. LLC*, No. 13-265-AWI, 2013 WL 3968229, at *8 (E.D. Cal. Jul. 31, 2013) (citations
2   omitted).
3         To state a claim for money had and received under Illinois law, the plaintiff must plausibly
4   allege that BCU "received money which in equity and good conscience belongs to the plaintiff."
5   *Kaiser v. Fleming*, 315 Ill. App. 3d 921, 925 (2000). "A money had and received claim is an
6   equitable action and is similar to a claim for unjust enrichment." *Bueker v. Madison County*, 61
7   N.E.3d 237, 256 (Ill. App. Ct. 2016). In order to state a claim for money had and received in
8   Illinois, a plaintiff must allege that (1) she was compelled to pay money to the defendant, (2) the
9   defendant had no legal right to demand the money, and (3) payment was necessary in order to
10  avoid an injury to her business, person or property. *Peterson v. O'Neill*, 255 Ill. App. 400, 402
11  (1930).
12        Although the law in California and Illinois differs with respect to this cause of action,
13  plaintiff has failed to properly plead this claim under either state's law. Accordingly, the Court
14  GRANTS defendant's motion to dismiss plaintiff's fourth cause of action, with leave to amend.

## V.    Violation of the EFTA (Regulation E)

17        Plaintiff's fifth claim is for damages under the Electronic Fund Transfer Act ("EFTA"), 15
18  U.S.C.A. § 1693m. Plaintiff alleges that BCU violated Regulation E of the EFTA, 12 C.F.R.
19  § 1005.17, which governs how financial institutions obtain an accountholder's consent to charge
20  overdraft fees on ATM and nonrecurring debit card transactions. Compl. ¶¶ 78-79. Plaintiff
21  alleges that BCU's opt-in form insufficiently describes its overdraft policy by merely stating that
22  "[a]n <u>overdraft</u> occurs when you do not have enough money in your account to cover a
23  transaction, but we pay it anyway." *See id.* (emphasis in original). In plaintiff's view, the form
24  describes overdrafts assessed based on an accountholder's ledger balance, rather than his or her
25  available balance. *Id.* Defendant counters that BCU's opt-in form fully complies with
26  Regulation E's requirements, using language virtually identical to the model form contained in
27  Regulation E. Mot. at 15:24-27.
28        In order to assess overdraft charges on ATM or nonrecurring debit card transactions,

11

Regulation E requires financial institutions to, among other things: (1) "[p]rovide[] the consumer with a notice in writing, or if the consumer agrees, electronically, segregated from all other information, describing the institution's overdraft service"; (2) "[p]rovide[] a reasonable opportunity for the consumer to affirmatively consent, or opt in, to the service for ATM and one-time debit card transactions"; and (3) "[o]btain[] the consumer's affirmative consent, or opt-in, to the institution's payment of ATM or one-time debit card transactions[.]" 12 C.F.R. § 1005.17(b). If a financial institution does not obtain affirmative consent that meets all the requirements of Regulation E's opt-in rule, then it is not permitted to charge overdraft fees on ATM and one-time debit card transactions. *Id*.

Regulation E further provides guidance for the content and form of the mandatory opt-in notice. *See* 12 C.F.R. § 1005.17(d). Opt-in notices "shall be substantially similar to" the model form provided in Appendix A to Regulation E. *Id.*; *see also id.*, Ch. X, Pt. 1005, App'x A. The opt-in notice must include the following information:

> (1) Overdraft service. A brief description of the financial institution's overdraft service and the types of transactions for which a fee or charge for paying an overdraft may be imposed, including ATM and one-time debit card transactions.
>
> (2) Fees imposed. The dollar amount of any fees or charges assessed by the financial institution for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft service, including any daily or other overdraft fees. If the amount of the fee is determined on the basis of the number of times the consumer has overdrawn the account, the amount of the overdraft, or other factors, the institution must disclose the maximum fee that may be imposed.
>
> (3) Limits on fees charged. The maximum number of overdraft fees or charges that may be assessed per day, or, if applicable, that there is no limit.
>
> (4) Disclosure of opt-in right. An explanation of the consumer's right to affirmatively consent to the financial institution's payment of overdrafts for ATM and one-time debit card transactions pursuant to the institution's overdraft service, including the methods by which the consumer may consent to the service; and
>
> (5) Alternative plans for covering overdrafts. If the institution offers a line of credit subject to Regulation Z (12 CFR part 1026) or a service that transfers funds from another account of the consumer held at the institution to cover overdrafts, the institution must state that fact. An institution may, but is not required to, list additional alternatives for the payment of overdrafts.

12

12 C.F.R. § 1005.17(d).

Plaintiff contends that BCU violated Regulation E by failing to properly describe its overdraft service. *See id.* § 1005.17(d)(1); Compl. ¶¶ 78-79. BCU argues that it fully complied with Regulation E by using the model form almost verbatim, and that it is therefore protected by the EFTA safe harbor provision, 15 U.S.C. § 1693m(d)(2). Mot. at 15. BCU further argues that when construing the opt-in form together with the Deposit Account Agreement, BCU adequately described its overdraft service. *Id.* at 16.

First, defendant may not rely on the safe harbor provision under 15 U.S.C. § 1693m(d)(2). Section 1693m provides a safe harbor for "any failure to make disclosure in proper form if a financial institution utilized an appropriate model clause issued by the [Consumer Financial Protection] Bureau or the [Federal Reserve] Board[.]" 15 U.S.C. § 1693m(d)(2). However, plaintiff does not allege that BCU failed to disclose its Courtesy Payment service in the "proper form"; plaintiff alleges that BCU's opt-in form does not contain the proper content. *See Pinkston-Poling v. Advia Credit Union*, No. 15-cv-1208-GJQ, 2016 WL 7473309, at *3 (W.D. Mich. Dec. 29, 2016) ("[B]ecause [plaintiff] complains about the accuracy of the Opt-in Agreement's description of [defendant's] overdraft service, *i.e.*, its content or substance, and not the form of the notice, the safe harbor provision does not bar [plaintiff's] EFTA claim."); *see also Berenson v. Nat'l Fin. Servs., LLC*, 403 F. Supp. 2d 133, 151 (D. Mass. 2005) ("[T]he statutory language [of the safe harbor provision] suggests that this defense insulates an institution from a challenge as to the form—not the adequacy—of the disclosure.").

Second, in this instance, the Court will not construe the opt-in form in conjunction with the Deposit Account Agreement. Regulation E specifically governs the requirements of the opt-in form on its own, and plaintiff has properly alleged that BCU's opt-in form is facially deficient. Plaintiff has stated a claim under the EFTA, 15 U.S.C. § 1693m, because she properly alleges that BCU's opt-in form does not adequately "descri[be] . . . the financial institution's overdraft service[.]" 12 C.F.R. § 1005.17(b)(1)(i), (d)(1). An applicant might not know from reading the opt-in form that BCU assesses overdrafts based on an account's available balance, as opposed to its ledger balance.

13

Accordingly, the Court DENIES defendant's motion to dismiss plaintiff's EFTA claim.

## VI. California Unfair Competition Law

Plaintiff's sixth and final cause of action is for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code § 17200, *et seq*. Plaintiff's UCL claim stems from the same course of conduct. She alleges that BCU unfairly assessed overdraft fees despite her account's sufficient ledger balance and BCU failed to provide members with accurate information regarding its overdraft practices. Compl. ¶ 84.

The Court defers ruling on this cause of action because, at this time, it is not clear whether California or Illinois law governs plaintiff's claims in this case. If Illinois law does indeed govern this dispute, then plaintiff cannot state a claim under the UCL. In plaintiff's amended complaint, she must allege facts from which this Court can determine whether California or Illinois law controls.

## CONCLUSION

For the foregoing reasons, the Court rules as follows:

Defendant's motion to dismiss plaintiff's first cause of action for breach of contract is GRANTED, with leave to amend.

Defendant's motion to dismiss plaintiff's second cause of action for breach of the implied covenant of good faith and fair dealing is GRANTED, with leave to amend.

Defendant's motion to dismiss plaintiff's third cause of action for unjust enrichment is GRANTED, with leave to amend.

Defendant's motion to dismiss plaintiff's fourth cause of action for money had and received is GRANTED, with leave to amend.

Defendant's motion to dismiss plaintiff's fifth cause of action for violation of the EFTA is DENIED.

The Court defers ruling on defendant's motion to dismiss plaintiff's sixth cause of action for violation of California's Unfair Competition Law.

**If she wishes to amend her complaint in accordance with this order, plaintiff must file**

**her amended complaint <u>no later than January 27, 2017</u>.**

This order resolves Dkt. No. 23.

**IT IS SO ORDERED**.

Dated:  January 12, 2017

_____
SUSAN ILLSTON
United States District Judge