1  Stuart M. Richter (CA 126231)
   stuart.richter@kattenlaw.com
2  Andrew J. Demko (CA 247320)
   andrew.demko@kattenlaw.com
3  **KATTEN MUCHIN ROSENMAN LLP**
   2029 Century Park East, Suite 2600
4  Los Angeles, CA  90067-3012
   Telephone:  310.788.4400
5  Facsimile:   310.788.4471
6
7  Attorneys for Defendant
   BAXTER CREDIT UNION
8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11               **SAN FRANCISCO DIVISION**

12
   SONDRA RAMIREZ,                    Case No. 3:16-cv-03765-SI
13
            Plaintiff,                **Baxter Credit Union's Notice Of**
14                                    **Motion And Motion To Strike Class**
       v.                            **Allegations In Plaintiff's First**
15                                    **Amended Complaint, Or Alternatively,**
                                     **To Deny Class Certification;**
16  BAXTER CREDIT UNION,              **Memorandum Of Points And**
                                     **Authorities In Support**
17          Defendant.
18
                                     [Filed concurrently with Declaration Of
19                                   Douglas Wright, Request For Judicial
                                     Notice, and Proposed Order]
20
21
22                                   Date:      March 17, 2017
                                     Time:      9:00 a.m.
23                                   Court:     1 – 17th Floor
                                     Judge:     Honorable Susan Illston
24
25
26                                   Complaint Filed:   July 5, 2016
                                     FAC Filed:         January 27, 2017
27
28

**TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 17, 2017, at 9:00 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Susan Illston, 450 Golden Gate Avenue, San Francisco, CA, 94102, Defendant Baxter Credit Union ("BCU") will and hereby do move pursuant to Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D), for an order striking class allegations in Plaintiff Sondra Ramirez's First Amended Complaint ("FAC"), or alternatively, to deny class certification.

## STATEMENT OF RELIEF SOUGHT BY BCU

Plaintiff seeks to certify a "Regulation E Class" defined as "[a]ll United States residents who have or have had accounts with BCU who incurred overdraft fee(s) for ATM or non-recurring debit card transactions since August 15, 2010." FAC ¶ 42. Plaintiff's FAC alleges that BCU violated Regulation E by failing to segregate the opt-in agreement from other disclosures and instead embedding it within the account application. FAC ¶¶ 28, 84, 91.

BCU moves to strike class allegations or deny class certification because individualized issues regarding the application of the one-year statute of limitations in the Electronic Funds Transfer Act, 15 U.S.C. § 1693m(g), predominate, rendering any class proceeding unmanageable. Plaintiff cannot certify the alleged Regulation E class relying solely on the EFTA given that her UCL claim should be dismissed because the FAC does not contain facts that support the application of California law. Moreover, BCU moves to strike allegations that Regulation E was violated by "failing to segregate" its opt-in agreement because BCU complied with 12 C.F.R. § 1005.17.

The motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Douglas Wright, Request For Judicial Notice, and Motion to Dismiss, the court

1   records and files in this action, and on such other argument and evidence as may be

2   presented to the Court at or prior to the hearing on this Motion.

3   Dated:  February 10, 2017                Respectfully submitted,

4                                           **KATTEN MUCHIN ROSENMAN LLP**
                                            Stuart M. Richter
5                                           Andrew J. Demko

6                                           By: _____ /s/Stuart M. Richter
                                            Attorneys for Defendant BAXTER CREDIT
7                                           UNION

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:16-cv-03765-SI          **MOTION TO STRIKE PLAINTIFF'S FAC**
124531349v2

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................. 1

II.     STATEMENT OF THE ISSUES TO BE DECIDED .................................... 2

III.    PLAINTIFF'S ALLEGATIONS .............................................................. 3

IV.     THE COURT SHOULD STRIKE PLAINTIFF'S REGULATION E
        CLASS ALLEGATIONS OR DENY CLASS CERTIFICATION. .............. 4

        A.    Plaintiff's Regulation E Class Must Be Limited To Members
              Incurring Their *First* Fee Within One Year Of Plaintiff Filing
              The Original Complaint. ...................................................... 5

        B.    Even If Plaintiff Tries To Allege Delayed Discovery, Or Some
              Other Exception, For The Absent, Putative Class Members, The
              Regulation E Class Period Must Still Be Limited By The One-
              Year Statute Of Limitations. ................................................ 7

V.      THE COURT SHOULD STRIKE ALLEGATIONS THAT BCU
        VIOLATED REGULATION E BY "FAILING TO SEGREGATE"
        OR "EMBEDDING" ITS OPT-IN AGREEMENT. ................................... 11

VI.     CONCLUSION ................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. W. Door & Trim v. Arch Specialty Ins. Co.,*
No. CV 15-00153 BRO SPX, 2015 WL 1266787 (C.D. Cal. Mar.
18, 2015) ............................................................................................5

*Broussard v. Meineke Disc. Muffler Shops, Inc.,*
155 F.3d 331 (4th Cir. 1998) ...............................................................10

*Brown v. Hain Celestial Grp., Inc.,*
913 F. Supp. 2d 881 (N.D. Cal. 2012) ......................................................5

*Cameron v. E.M. Adams & Co.,*
547 F.2d 473 (9th Cir. 1976) ...................................................................9

*Cholakyan v. Mercedes-Benz USA, LLC,*
796 F. Supp. 2d 1220 (C.D. Cal. 2011) .....................................................4

*Diviacchi v. Affinion Grp., Inc.,*
No. 14-10283, 2015 WL 3631605 (D. Mass. Mar. 11, 2015) ..........................7

*Fantasy Inc. v. Fogerty,*
984 F.2d 1524 (9th Cir. 1993) ................................................................11

*Gartin v. S&M NuTec LLC,*
245 F.R.D. 429 (C.D. Cal. 2007) ............................................................2

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982) .............................................................................5

*Harvey v. Google, Inc.,*
No. 15-3590, 2015 WL 9268125 (N.D. Cal. Dec. 21, 2015) ....................6, 7, 8

*Henson v. Fid. Nat'l Fin., Inc.,*
300 F.R.D. 413 (C.D. Cal. 2014) .........................................................5, 10

*Kamm v. Cal. City Dev. Co.,*
509 F.2d 205 (9th Cir. 1975) ..................................................................4

*Magnum v. Action Collection Serv., Inc.,*
575 F.3d 935 (9th Cur. 2009) ..................................................................7

*Manning v. Boston Med. Ctr. Corp.*,
   725 F.3d 34 (1st Cir.2013)...................................................................................5

*Norman-Bloodshaw v. Lawrence Berkeley Lab.*,
   135 F.3d 1260 (9th Cir. 1998).............................................................................7

*O'Connor v. Boeing N. Am., Inc.*,
   197 F.R.D. 404 (C.D. Cal. 2000)........................................................................10

*Ramirez v. Baxter Credit Union*,
   No. 16-CV-03765-SI, 2017 WL 118859 (N.D. Cal. Jan. 12, 2017) ....................1

*RDF Media Ltd. v. Fox Broadcasting Co.*,
   372 F.Supp.2d 556 (C.D. Cal. 2005)..................................................................11

*Repay v. Bank of Am., N.A.*,
   No. 12-10228, 2013 WL 6224641 (N.D. Ill. Nov. 27, 2013)...............................6

*Sanders v. Apple, Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009)..............................................................4, 10

*Shabez v. Polo Ralph Lauren Corp.*,
   586 F. Supp. 2d 1205 (C.D. Cal. 2008)...............................................................5

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
   Nos. 130 & 138, 2013 U.S. Dist. LEXIS 88612 (C.D. Cal. June 17,
   2013)....................................................................................................................9

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) .............................................................................4

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011)........................................................................................10

**Statutes**

15 U.S.C. § 1693 ..............................................................................................*passim*

15 U.S.C. § 1693m(g)........................................................................................5, 7

28 U.S.C. § 2072...........................................................................................1, 9, 10

28 U.S.C. § 2072(b) ............................................................................................10

Cal. Bus. & Prof. Code § 17200 ........................................................................1, 3

**Rules**

Fed. R. Civ. P. 12 .................................................................................................. 4

Fed. R. Civ. P. 12(f) ........................................................................................... 5, 11

Fed. R. Civ. P. 23 ............................................................................................. 4, 10

Fed. R. Civ. P. 23(c)(1)(A) .................................................................................... 4

Fed. R. Civ. P. 23(d)(1)(D) ................................................................................... 4

**Regulations**

12 C.F.R § 1005.17 ...................................................................................... *passim*

12 C.F.R § 1005.17(b) .......................................................................................... 12

12 C.F.R. § 1005.17, Comment 17(b)-5 ............................................................... 13

12 C.F.R. § 1005.17, Comment 17(b)-6 ........................................................... 2, 12

74 Fed. Reg. 59033 (Nov. 17, 2009) .................................................................... 13

74 Fed. Reg. 59041 (Nov. 17, 2009) .................................................................... 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Court should strike (1) Plaintiff's "Regulation E" class definition because it is fatally flawed; and (2) Plaintiff's allegations that Baxter Credit Union ("BCU") violated Regulation E by not "segregating" its opt-in form because BCU clearly did.

Plaintiff's Regulation E class cannot be defined with a *six-year* class period. Specifically, the proposed class goes back to August 15, 2010 (FAC ¶ 43), even though the claims Plaintiff asserts have a one-year statute of limitations under Regulation E (12 C.F.R § 1005.17) of the Electronic Fund Transfer Act (15 U.S.C. §§ 1693 *et seq.*) ("EFTA").[1]  There is no way to certify a six-year class period without violating the Rules Enabling Act and BCU's due process rights to present defenses.

The only conceivable way to do it would be to use either delayed discovery or equitable tolling.  But to the extent either is available (and they are not), the class period still must be limited to one year because: (1) Plaintiff and the putative class members need only look at their account online or check a monthly statement to determine all the facts necessary to bring this cause of action; and (2) the necessary inquiries for delayed discovery are factual and overwhelmingly individualized.  They focus on factors like when an individual discovered or could have discovered the supposed wrongdoing exercising reasonable diligence, when an individual was injured, and why a particular individual could not have brought a

---

[1]   As explained in BCU's concurrently filed Motion to Dismiss, Plaintiff's UCL claim should be dismissed because the FAC does not contain any facts that support the application of California law.  *See* Motion to Dismiss at 8.  This despite the Court directing Plaintiff to "allege facts from which this Court can determine whether California or Illinois law controls" because "[i]f Illinois law does indeed govern this dispute, then plaintiff cannot state a claim under the UCL."  *Id.* at 5 (citing *Ramirez v. Baxter Credit Union*, No. 16-CV-03765-SI, 2017 WL 118859, at *8 (N.D. Cal. Jan. 12, 2017)).  As such, Plaintiff's Regulation E claims are solely premised on violations of the EFTA, which are limited to the applicable one-year statute of limitations—not a four-year limitation period under the UCL.

1

1  lawsuit within the one-year limitations period.  Having a jury decide these issues
2  for tens of thousands of putative class members would overwhelm the case (and
3  the Court's resources).  This is why courts often deny class certification when it
4  would require individualized issues regarding the application of the statute of
5  limitations.  *See, e.g., Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 441 (C.D. Cal.
6  2007) (exceptions to statute of limitations would "turn, in large part, on each class
7  member's knowledge and conduct").  This case is no different.

8        The Court should also strike Plaintiff's allegations that BCU violated
9  Regulation E by "failing to segregate" or "embedding" the opt-in agreement within
10 the account application.  BCU complied with Regulation E; it provided "a check
11 box that the consumers could sign or select to affirmatively consent" and the
12 "check box [wa]s used solely for the purposes of evidencing the consumer's choice
13 whether or not to opt into the overdraft service and not for other purposes."
14 12 C.F.R. § 1005.17, Comment 17(b)-6.  Plaintiff's allegations simply conjure up
15 requirements that do not exist.  Consequently, the Court should strike these
16 allegations.

17 **II.    STATEMENT OF THE ISSUES TO BE DECIDED**

18       1.    Should the Court strike Plaintiff's Regulation E class definition, or
19 deny class certification of it, when (i) the EFTA imposes a one-year statute of
20 limitations, (ii) the Regulation E claims accrue as soon as the first overdraft fee for
21 a non-recurring or ATM transaction is charged, and (iii) the delayed discovery rule
22 does not apply, but even if it did, the limitations period controls because a longer
23 class period cannot be certified and members should have known all of the
24 necessary facts to bring this cause of action upon receiving their monthly account
25 statements?

26       2.    Should the Court strike Plaintiff's allegations that BCU violated
27 Regulation E by "by failing to segregate the Opt-In Agreement from all other
28 disclosures and instead embedding it within the account application" when BCU

2

1  required members to affirmatively check a box consenting to overdraft services,

2  which was provided to members in a manner permitted by Regulation E?

3  **III.   PLAINTIFF'S ALLEGATIONS**

4       Plaintiff alleges BCU's overdraft program is unlawful because it assesses

5  overdraft fees based on a customer's "available" balance as opposed to "ledger"

6  balance.  FAC ¶ 25.  This allegedly amounts to a breach of contract, breach of the

7  implied covenant of good faith and fair dealing, unjust enrichment, money had and

8  received, violation of Regulation E under the EFTA, and violation of California's

9  Unfair Competition Law ("UCL").  FAC ¶¶ 55-96.

10       Plaintiff seeks to represent two classes.  One is a Regulation E class that is

11  defined as: "All United States residents who have or have had accounts with BCU

12  who incurred overdraft fee(s) for ATM or non-recurring debit card transactions

13  since August 15, 2010."  FAC ¶ 43.

14       Plaintiff attaches two exhibits to her FAC.  The first is BCU's "Opt-in

15  Agreement," which is part of a two-page document that contains a section titled

16  "WHAT YOU NEED TO KNOW ABOUT OVERDRAFTS AND OVERDRAFT

17  FEES."   It contains separate, un-selected, check boxes for members to

18  affirmatively select whether they do, or do not, want to authorize the credit union

19  to pay overdrafts.  FAC ¶ 23, Exh. 1.  The second exhibit is BCU's "Account

20  Agreement."  FAC ¶ 24, Exh. 2.  Plaintiff collectively refers to these agreements as

21  the "Customer Agreements" (FAC ¶ 24), and claims that together they mean that

22  BCU promised and represented that it would charge overdraft fees based on the

23  "ledger" balance.  FAC ¶ 25.

24       With regard to Plaintiff's Regulation E cause of action, she alleges that

25  BCU's opt-in agreement, along with purportedly not describing "BCU's actual

26  overdraft service," violated 12 C.F.R. § 1005.17 "by failing to segregate the Opt-In

27  Agreement from all other disclosures and instead embedding it within the account

28

application…." FAC ¶¶ 30, 84, 91.  Both parties have engaged in discovery prior to this Motion.

## IV.   THE COURT SHOULD STRIKE PLAINTIFF'S REGULATION E CLASS ALLEGATIONS OR DENY CLASS CERTIFICATION.

The Court has discretion to limit the class period to one year on an early motion to strike or to deny class certification.  The Ninth Circuit has long-held that class allegations may be stricken before discovery is completed.  *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209-10 (9th Cir. 1975); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009) (Rule 23 "does not preclude a defendant from brining a 'preemptive' motion to deny class certification where the class action plaintiff has yet to seek certification").  Indeed, the Federal Rules of Civil Procedure authorize the Court to strike class allegations.  *See* Fed. R. Civ. P. 23(d)(1)(D) ("In conducting an action under this rule, the court may issue orders that require the pleadings to be amended to eliminate allegations about representation of absent persons.").[2]

The most common objection to an early motion to strike class allegations is that it is premature because the plaintiff has not had an opportunity to conduct discovery.  *See, e.g., Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011).  But where, like here, discovery has already occurred and more discovery will do nothing but cost the parties time and resources, courts may and should strike the class allegations.  *See Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009) (noting that the Supreme Court has held that the class certification issue is sometimes "plain enough from the pleadings" and that the court should use Rule 12 to strike impertinent matters "to avoid the expenditure of time and money that must arise from litigating spurious issues.")

---

[2]   This provision was meant to provide the Court a means to comply with Rule 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action").

4

(citations and quotations omitted).   Here, there is not a deposition answer, document request, interrogatory response, or request for admission that will change the outcome that Plaintiff's Regulation E class period may only go back one year. *See Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012) ("Thus, a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained."); *Shabez v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1211 (C.D. Cal. 2008) (granting motion to strike the class allegations where one-year statute of limitations applied and the plaintiff alleged a three-year class period); *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir.2013) (Rule 12(f) also grants courts the authority to strike class allegations that "cannot possibly move forward on a classwide basis[.]"); *Am. W. Door & Trim v. Arch Specialty Ins. Co.*, No. CV 15-00153 BRO SPX, 2015 WL 1266787, at *8 (C.D. Cal. Mar. 18, 2015) ("Here, Defendant implies that discovery could not possibly aid Plaintiff in demonstrating that a class action is appropriate . . . the Court agrees.").[3]

## A.   Plaintiff's Regulation E Class Must Be Limited To Members Incurring Their *First* Fee Within One Year Of Plaintiff Filing The Original Complaint.

Class definitions are often, if not always, temporally limited by the applicable statute of limitations. *See Henson v. Fid. Nat'l Fin., Inc.*, 300 F.R.D. 413, 420-21 (C.D. Cal. 2014) ("[M]ost proposed class definitions that the Court comes across contain some sort of temporal limitations usually keyed to the applicable statute of limitations."). Here, the EFTA has a one-year limitations period. 15 U.S.C. 1693m(g).

As applied, Plaintiff's Regulation E class, without tolling, would be limited to members incurring their *first* overdraft fee on or after July 5, 2015—one year

---

[3]   The Court's discretion to consider class allegations at the pleadings stage derives from Supreme Court precedent. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

prior to the day the original complaint was filed—because Regulation E claims accrue on the first unauthorized transfer.   Specifically, the Regulation E claims accrue as soon as the first fee is charged after a putative class member opted-in to overdraft protection for ATM and non-recurring debit card transactions:

> Plaintiff contends that he has alleged a series of discrete acts that violated the EFTA.   But the EFTA does not require that the payee obtain a separate written authorization for each transfer.   Instead, the payee must obtain a single written authorization for the entire series of transfers.   Thus, once the series of transfers is initiated by the first transfer, the violation occurs and Plaintiff is harmed.   Put another way, rather than alleging a series of wrongful acts, Plaintiff has alleged a wrongful omission: failing to obtain written authorization for the series of transfers that were agreed upon and to provide a copy to the consumer.

*See Repay v. Bank of Am., N.A.*, No. 12-10228, 2013 WL 6224641, at *4 (N.D. Ill. Nov. 27, 2013).

Plaintiff's allegations are identical.   She alleges that BCU violated Regulation E by "misstating its overdraft practices in … stating that it would assess an overdraft fee only when there is not enough money in the account to cover the transaction, when in actual practice, Defendant assesses overdraft fees even when there is money in the account to cover the transaction."   FAC ¶¶ 39, 83.   That claim accrues as soon as the first fee is charged. *See also Harvey v. Google, Inc.*, No. 15-3590, 2015 WL 9268125, at *3 (N.D. Cal. Dec. 21, 2015) ("[T]he first recurring transfer triggers the one year limitations period as to that transfer, but it also triggers the limitations period for all ensuing transfers.   There is no applicable 'continuous violation' doctrine to save the claim from the time bar of [the] EFTA

if the first recurring transfer falls outside the limitations period, even if there are later transfers which do fall within the period.").[4]

Plaintiff's class definition, therefore, must be limited to include only members who *first* incurred an overdraft fee within one year of the filing of the original complaint. For example, putative class members who incurred overdraft fees as early as 2011 must be excluded from Plaintiff's Regulation E class pursuant to the EFTA's statute of limitations. As discussed below, even delayed discovery would not save these putative class members' claims.

**B. Even If Plaintiff Tries To Allege Delayed Discovery, Or Some Other Exception, For The Absent, Putative Class Members, The Regulation E Class Period Must Still Be Limited By The One-Year Statute Of Limitations.**

If delayed discovery is permitted, it would postpone the running of the statute of limitations until a plaintiff (or putative class member) knew or, through the exercise of reasonable diligence, should have known of the facts (not the law) underlying the claim. *See generally Magnum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cur. 2009); *Norman-Bloodshaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir. 1998).

Plaintiff and the putative class members would have known all of the necessary facts to bring this cause of action as soon as they were charged an overdraft fee when their ledger balance was positive or very shortly thereafter. A member need only look at their account online or check a monthly statement to determine that BCU did not use the "ledger" balance in charging an overdraft fee.

---

[4] This represents the majority view and makes the most sense when considering the language of the EFTA's statute of limitations, which runs from a violation, not from "accrual." 15 U.S.C. § 1693m(g). As Plaintiff alleges, the violation is failing to get authorization to charge overdraft fees. FAC ¶ 39. Since only one authorization is necessary to charge an infinite amount of overdraft fees, once a single fee has been charged, the violation is complete. *Harvey*, 2015 WL 9268125 at *3. For the minority view, *see Diviacchi v. Affinion Grp., Inc.*, No. 14-10283, 2015 WL 3631605, at *9 (D. Mass. Mar. 11, 2015).

1 At best, this is when the putative class could have discovered the alleged injury
2 though reasonable diligence:

> If Harvey had exercised due diligence, she should have
> discovered the injury either by looking at her Google
> account or even more simply, looking at her bank
> statements. It would not have taken much to discover that
> over the first 12 months of charges, there were hundreds
> of debits amounting to thousands of dollars on her bank
> statements. Because the discovery rule does not save her
> claim, the Court dismisses the EFTA claim.

8 *Harvey*, 2015 WL 9268125 at *4 (assuming the discovery rule applied and
9 granting a motion to dismiss on statute of limitations grounds).  Here, a putative
10 class member need only be able to balance a checkbook to have determined the
11 purported wrong, something certainly within the bounds of reasonable diligence
12 when seeing the bank has charged an overdraft fee.  *See* FAC, Exh. 2 at 16 ("It is
13 your responsibility to look at every statement and notify us of any and all
14 unauthorized transactions, errors or irregularities as soon as possible.").  Indeed,
15 Plaintiff was able to look at her records (*i.e.*, her monthly statements), determine
16 that she was charged a fee with a positive ledger balance on January 16, 2016, and
17 bring suit within the one-year limitations period.  (Declaration of Douglas Wright
18 in Support of Defendant's Motion to Strike ("Wright Decl."), ¶ 2, Exh. 1; FAC
19 ¶ 37 ("[O]n January 16, 2016, Plaintiff had a positive balance of $347.86 in her
20 checking account when she made a point of sale debit card payment of $60.97,
21 leaving her with a positive balance of $269.89.  Despite the fact that Plaintiff had
22 sufficient funds in her account to cover the transaction, BCU assessed a $29.00
23 overdraft fee against her account…").

24      Accordingly, at best for Plaintiff, the discovery rule would have minimal
25 impact on extending the statute of limitations beyond the time a putative class
26 member received his or her account statement.  Therefore, at best for Plaintiff, the
27 Regulation E class period should be limited to members who *first discovered* that

28

3:16-cv-03765-SI     **MOTION TO STRIKE PLAINTIFF'S FAC**
124531349v2

1  an overdraft fee was charged on a positive ledger balance (i.e. received an account

2  statement) within one year of Plaintiff filing the original complaint.

3      Even if a more rigorous inquiry were required (and it is not), the Regulation

4  E class still must be limited to one year. Certifying the proposed six-year period

5  would violate the Rules Enabling Act and BCU's due process rights because a

6  more factually intensive inquiry would be required to determine when a class

7  member discovered, or reasonably could have discovered, her injury and its cause.

8  These individualized factual inquiries would predominate over any common

9  question this case may present.

10     While it is true, as a general proposition, that individual issues relating to the

11  statute of limitations do not preclude class certification per se, *see Cameron v.*

12  *E.M. Adams & Co.*, 547 F.2d 473, 477-78 (9th Cir. 1976), that is not the case here.

13  *Cameron* was a securities fraud case, in which any potential class member that

14  would likely have knowledge of the intentional wrongdoing of certain corporate

15  officers were excluded from the class (*i.e.*, other officers, directors, etc.). The

16  Court found it unlikely that any member of the general public could have or did

17  discover the wrongdoing prior to the public announcement. It therefore held that

18  the discovery rule did not preclude class certification.[5]

19     The opposite is true here. Plaintiff alleges that her potential classes include

20  thousands of BCU members. FAC ¶ 46. Some putative class members knew when

21  opening an account that an overdraft fee may be charged even if their ledger

22  balance could cover the transaction. Some could determine it by looking at their

23  monthly account statements. And others learned it by contacting BCU's call center

24  to complain about overdraft fees, at which time they would be told that overdrafts

25  are assessed based on available balance and explained that members can monitor

26
27  [5]    Indeed, it is only where the "defendant's own omissions or deception resulted in plaintiffs remaining unaware about their injury or its cause" that the statute of limitations may be tolled on a class-wide basis. *Vaccarino v. Midland Nat'l Life Ins. Co.*, Nos. 130 & 138, 2013 U.S. Dist. LEXIS 88612, at *45 (C.D. Cal. June 17, 2013).
28

their available balance at ATM's, by calling BCU's toll free number, or through online and mobile banking applications.  Given the inevitable lack of uniformity, the Court may not pick a single discovery rule time period for tens of thousands of putative class members.  Otherwise, the statute of limitations would work one way for an individual action (depending on the facts and circumstance of a particular plaintiff) and another way in a class action (an artificial time period) in violation of the Rules Enabling Act.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2561 (2011) ("Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b) . . . a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims.")

Accordingly, BCU would have the right to test when each member knew or should have known of the injury.  "[T]he sheer amount of [such] individualized analysis is dizzying," thus negating class certification because "[p]utative class member No. 1's diligence in unearthing a potential . . . violation will bear little on putative class member No. 2's actions."  *Henson v. Fidelity Nat. Financial Inc.*, 300 F.R.D. 413, 421 (C.D. Cal., 2014); *see also O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 415 (C.D. Cal. 2000) (denying class certification where "the limitations defense would require individual trials for each of the class members"); *Sanders*, 672 F. Supp. 2d at 991 (granting motion to strike class allegations with leave to amend because "[i]f the proposed class were to be certified, the Court would be forced to engage in individual inquiries of each class member with respect to materiality of the statement, whether the member saw Apple's advertisements or visited Apple's website."); *see generally Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) (application of the discovery rule precluded class certification because it required "individualized inquiry into what each [plaintiff] knew about [defendant's conduct] and when he knew it.").

1   Because applying delayed discovery here would result in thousands of
2   individualized inquiries, the Court should strike Plaintiff's class allegations with
3   leave and limit the Regulation E class period to one year from the filing of the
4   original complaint.  Alternatively, class certification should be denied.

5   **V.    THE COURT SHOULD STRIKE ALLEGATIONS THAT BCU**
6   **VIOLATED REGULATION E BY "FAILING TO SEGREGATE" OR**
7   **"EMBEDDING" ITS OPT-IN AGREEMENT.**

8   Rule 12(f) of the Federal Rules of Civil Procedure authorizes a court to
9   strike from any pleading any "immaterial, impertinent, or scandalous matter."
10  F.R.Civ.P. 12(f).  A motion to strike is the proper mechanism to attack portions of
11  a pleading, even single words or phrases.  *Fantasy Inc. v. Fogerty*, 984 F.2d 1524,
12  1527 (9th Cir. 1993), rev'd on other grounds, *Fogerty v. Fantasy Inc.*, 510 U.S.
13  517, (1994).   The essential function of a Rule 12(f) motion is to "avoid the
14  expenditure of time and money that must arise from litigating spurious issues by
15  dispensing with those issues prior to trial."  *Id.*  BCU's motion to strike Plaintiff's
16  unfounded Regulation E allegations should be granted because "any questions of
17  law are clear and not in dispute, and that under no set of circumstances could the
18  claim or defense succeed."   *RDF Media Ltd. v. Fox Broadcasting Co.*,
19  372 F.Supp.2d 556, 566 (C.D. Cal. 2005).

20  Plaintiff's allegations that BCU failed to segregate Plaintiff's opt-in from the
21  rest of the account opening documents fails.   BCU complied with 12 C.F.R.
22  § 1005.17.  Regulation E's opt-in requirement provides that:

23   A financial institution holding a consumer's account shall
24   not assess a fee or charge on a consumer's account for an
     ATM or one-time debit card transaction pursuant to the
     institution's overdraft service, unless the institution:
25
26   (i) Provides the consumer with a notice in writing, or if
     the consumer agrees electronically, *segregated from all*
27   *other information*, describing the institution's overdraft
     service;

28

(ii) Provides a reasonable opportunity for the consumer to *affirmatively consent*, or opt-in, to the service for ATM and one time debit card transactions;

(iii) Obtains the consumer's affirmative consent, or opt-in, to the institution's payment of ATM or one time debt card transactions; and

(iv) Provides the consumer with confirmation of the consumer's consent in writing, or if the consumer agrees, electronically, which includes a statement informing the consumer of the right to revoke such consent.

12 C.F.R § 1005.17(b) (emphases added).   Plaintiff alleges that BCU violated Regulation E by failing to meet the "segregated from all other information" requirement because BCU's opt-in agreement is embedded within the account application, "which has the effect of diminishing the effect and importance of the disclosure due to the substantial harm causes by opting in." FAC ¶ 84.  In support of this allegation, Plaintiff cites to comment 17(b)-6 of 12 C.F.R. § 1005.17, which, according to Plaintiff, means that "the consent must be separate from other consents or acknowledgments." *Id.*   While the general requirement is true, Plaintiff leaves out critically important commentary:

An institution may obtain a consumer's affirmative consent by providing a blank signature line or *check box* that the consumer could sign or select to affirmatively consent, provided that the signature line or check box is used solely for purposes of evidencing the consumer's choice whether or not to opt into the overdraft service and not for other purposes.

12 C.F.R. § 1005.17, Comment 17(b)-6 (emphasis added).  BCU did exactly this.

The opt-in agreement provided to Plaintiff, and other putative class members, contains the following section that *is segregated* from other information and consents in the document.  It requires a member to affirmatively *check the box* if he or she desires to opt-in to BCU's overdraft services:

**MOTION TO STRIKE PLAINTIFF'S FAC**

WHAT YOU NEED TO KNOW ABOUT OVERDRAFTS AND OVERDRAFT FEES

**What You Need to Know about Overdrafts, Courtesy Payment and Service Charges**

An <u>overdraft</u> occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway. We can cover your overdrafts in two different ways:

1. Courtesy Payment that is a link to your Savings account that will transfer funds, which may be less expensive than our Courtesy payment service.
2. Our Courtesy Payment service that comes with your account (providing eligibility requirements are met).

**What is the Courtesy Payment service that comes with my account?**

We <u>do</u> authorize and pay overdrafts for the following types of transactions:

- Checks and other transactions made using your checking account number
- Automatic bill payments

We <u>do not</u> authorize and pay overdrafts for the following types of transactions unless you opt-in to have these transactions covered (see below):

- ATM transactions
- One-time (individual, not recurring) Debit Card transactions

We pay overdrafts at our discretion, which means we <u>do not guarantee</u> that we will always authorize and pay any type of transaction.

If we do <u>not</u> authorize and pay an overdraft, your transaction will be declined.

**What fees will I be charged if the Credit Union pays my overdraft?**

Under our standard overdraft practices:

- We will charge you a fee of $29.00 each time we pay an overdraft. There is a $5.00 grace on your account for overdrafts, meaning overdraft fees will only be incurred if you draw your account negative by over $5.00.
- There is a limit of 5 Courtesy Payment fees that the Credit Union will charge per day, per account.

**What if I want the Credit Union to authorize and pay overdrafts on my ATM and one-time (individual, not recurring) Debit Card transactions?**

Select the box below to opt-in to our Courtesy Payment service.

☒ I do want Baxter Credit Union to authorize and pay overdrafts on my ATM and one-time (individual, not recurring) Debit Card transactions.

☐ I do NOT want Baxter Credit Union to authorize and pay overdrafts on my ATM and one-time (individual, not recurring) Debit Card transactions.

FAC ¶ 23, Exh. 1, p. 2.  While the overdraft opt-in agreement displayed above is part of the account application, this is expressly permitted:

> A financial institution may require a consumer, as a necessary step to opening an account, to choose whether or not to opt into the payment of ATM of one-time debit card transactions pursuant to the institution overdraft service.  *For example, the institution could require the consumer, at account opening, to sign a signature line or check a box on a form ... indicating whether or not the consumer affirmatively consents at account opening.*

12 C.F.R. § 1005.17, Comment 17(b)-5 (emphasis added).

BCU has met each and every requirement of Regulation E's affirmative opt-in requirement.  To the extent Plaintiff argues that the disclosure must be provided on a separate piece of paper/different screen, or that a member must be provided a signature line specific to the overdraft opt-in, such requirements are not in the regulation or the CFPB's commentary.  Rather, the purpose of the opt-in requirement is to ensure that financial institutions are not hiding the terms within numerous pages of fine print, and the member is affirmatively consenting to overdraft services instead of unintentionally opting-in.  *See* 74 Fed. Reg. 59033, 59041 (Nov. 17, 2009) ("[t]hese requirements are intended to ensure that opt-in

13

1  information is not buried or obscured within other account documents and
2  overlooked by the consumer."). On its face, BCU's opt-in disclosure fulfills these
3  purposes—namely, Plaintiff, and putative class members, affirmatively selected
4  the box consenting to overdraft services, which was provided to them in a manner
5  expressly permitted under the regulation.

6      For this reason, the Court should strike Plaintiff's "failing to segregate"
7  allegations. Discovery on these allegations will do nothing but cost the parties
8  time and resources because under no set of circumstances could Plaintiff state a
9  Regulation E claim.

10 **VI.    CONCLUSION**

11     Plaintiff's FAC alleges Regulation E violations that have no merit, and a
12 class definition that ignores the applicable one-year statute of limitations. The
13 Court should grant the motion and strike: (1) the Regulation E class definition,
14 limiting the putative class period to members who incurred a first overdraft fee
15 within one year prior to the filing of the original complaint; and (2) the class
16 allegations premised on BCU failing to adequately segregate its opt-in agreement
17 found in paragraphs 28, 84 and 91.

18

19 Dated: February 10, 2017          Respectfully submitted,

20                                   **KATTEN MUCHIN ROSENMAN LLP**
                                     Stuart M. Richter
21                                   Andrew J. Demko

22

23 By:_____/s/Stuart M. Richter_____
                                         Stuart M. Richter
24                                   Attorneys for Defendant BAXTER CREDIT
                                     UNION

25

26

27

28

14

1

### CERTIFICATE OF SERVICE

2      The undersigned hereby certifies that on February 10, 2017, she caused a

3 copy of the foregoing, **BAXTER CREDIT UNION'S NOTICE OF MOTION**

4 **AND MOTION TO STRIKE CLASS ALLEGATIONS IN PLAINTIFF'S**

5 **FIRST AMENDED COMPLAINT; OR ALTERNATIVELY, TO DENY**

6 **CLASS CERTIFICATION; MEMORANDUM OF POINT AND**

7 **AUTHORITIES IN SUPPORT** to be served on the interested parties in this

8 matter by CM/ECF electronic mail, as follows:

9

10 Richard D. McCune                    **The Kick Law Firm**
   rdm@mccunewright.com                  Taras Kick
11 Jae (Eddie) K. Kim                    taras@kicklawfirm.com
   jkk@mccunewright.com                  G. James Strenio
12 **McCune Wright Arevalo LLP**         James@kicklawfirm.com
   3281 East Guasti Road, Suite 100      Robert J. Dart
13 Ontario, CA 91761                     Robert@kicklawfirm.com
   Telephone: (909) 557-1250             201 Wilshire Blvd
14 Facsimile:  (909) 557-1275            Santa Monica CA 90401
                                         Telephone: (310) 395-2988
15                                       Facsimile:  (310) 395-2088

16 *Attorneys for Plaintiff*
   *Sondra Baxter*
17 *and the Putative Class*              *Attorneys for Plaintiff*
                                         *Sondra Baxter*
18                                       *and the Putative Class*

19

20

21

22

23

24 
   _____
   Sussan Motta
25

26

27

28
   _____
   **CERTIFICATE OF SERVICE**