Richard D. McCune (State Bar No. 132124)
rdm@mccunewright.com
Jae K. Kim (State Bar No. 236805)
jkk@mccunewright.com
McCune Wright Arevalo LLP
3281 East Guasti Road, Suite 100
Ontario, California 91761
Telephone:  (909) 557-1250
Facsimile:  (909) 557 1275

THE KICK LAW FIRM, APC
Taras Kick (State Bar No. 143379)
(Taras@kicklawfirm.com)
Robert J. Dart (State Bar No. 264060)
(Robert@kicklawfirm.com)
815 Moraga Drive
Los Angeles, California 90049
Telephone:   (310) 395-2988
Facsimile:   (310) 395-2088

Attorneys for Plaintiff Sondra Ramirez
and the Putative Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONDRA RAMIREZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BAXTER CREDIT UNION, and DOES  1-100,<br><br>Defendants. | Case No.:  3:16-cv-03765-SI<br><br>**PLAINTIFF SONDRA RAMIREZ'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Assigned to Judge Susan Illston<br><br>Date:           September 22, 2017<br>Time:           9:00 a.m.<br>Courtroom:    1, 17th Floor |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 22, 2017, at 9:00 a.m. or as soon thereafter as the matter may be heard in the courtroom of the Honorable Susan Illston, 450 Golden Gate Avenue, San Francisco, CA, 94102, Plaintiff Sondra Ramirez will and hereby does move pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order granting preliminary approval to the class action settlement in this matter.

### STATEMENT OF ISSUES TO BE DECIDED

By this motion, Plaintiffs move the Court for an Order:

1. Preliminarily approving the settlement in this action;

2. Preliminarily certifying a settlement class;

3. Appointing Class Counsel;

4. Appointing Ms. Ramirez as the settlement class representative;

5. Approving the proposed form of notice and notice program, and directing that notice be disseminated pursuant to this program; and

6. Setting certain dates in connection with the final approval of the settlement.

This Motion is based on the accompanying Memorandum of Points and Authorities, Declarations of Richard McCune, Taras Kick, Arthur Olsen, and all exhibits thereto, all papers and records on file in this matter, and such other matter as the Court may allow.

Dated: September 1, 2017

Respectfully submitted,

MCCUNE WRIGHT AREVALO LLP

BY:   _/s/ Taras Kick_

Richard D. McCune
Jae (Eddie) K. Kim

THE KICK LAW FIRM, APC
Taras Kick
Robert Dart
Attorneys for Plaintiff Sondra Ramirez
and the Putative Class

## TABLE OF CONTENTS

I.     SUMMARY ...................................................................................................................1

II.    RELEVANT FACTS .....................................................................................................2

III.   TERMS OF THE SETTLEMENT ...............................................................................4

       1.     Class Definition ................................................................................................4

       2.     Monetary Payment ............................................................................................4

       3.     Change in Systems ...........................................................................................4

       4.     Payments to Claimants .....................................................................................4

       5.     *Cy Pres* Distribution ........................................................................................5

       6.     Class Notice ......................................................................................................5

       7.     Opt Out Procedures ..........................................................................................6

       8.     Opportunity to Object .......................................................................................6

       9.     Attorneys' Fees and Expenses ..........................................................................6

       10.    Release ..............................................................................................................7

IV.    ARGUMENT .................................................................................................................7

       A.     The Settlement Should Be Preliminarily Approved .........................................7

              1.     Class Action Settlement Procedure........................................................7

              2.     The Standard for Granting Preliminary Approval ................................8

              3.     The Settlement is Reasonable, Fair and Adequate Given the Strength of the
                     Case and the Risks of Litigation ...........................................................9

              4.     The Settlement Treats Class Members Equally ...................................11

              5.     The Recommendation of Experienced Counsel Supports Approval .................11

              6.     The Proposed Forms of Notice and Notice Programs are Appropriate and
                     Should Be Approved ...........................................................................11

              7.     The Class Representative Service Award ............................................12

       B.     The Proposed Settlement Class Should Be Certified......................................13

              1.     The Requirement of Numerosity is Satisfied.......................................13

              2.     The Requirement of Commonality is Satisfied....................................13

              3.     The Requirement of Typicality is Satisfied ........................................14

i

4.      The Requirement of Adequate Representation is Satisfied ...............................15

5.      The (Former) Implied Requirement of Ascertainability is Satisfied .................16

6.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)........16

   a.      Common Questions of Law and Fact Predominate ...............................16

   b.      This Class Action is the Superior Method of Adjudication...................17

C.      SCHEDULE OF SETTLEMENT DATES .....................................................................18

V.      CONCLUSION.............................................................................................................................19

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 3:16-cv-03765-SI

## <u>TABLE OF AUTHORITIES</u>

Cases

*Amchem Prods. Inc. v. Windsor*
    521 U.S. 591, 620 (1997)................................................................13, 15, 16, 18

*Armstrong v. Davis*
    275 F.3d 849 (9th Cir. 2001) ................................................................14

*Bellinghausen v. Tractor Supply Co.*
    306 F.R.D. 245 (N.D. Cal. 2015)................................................................10

*Boyd v. Bechtel Corp.*
    485 F. Supp. 610 (N.D. Cal. 1979) ................................................................11

*Briseno v. ConAgra Foods, Inc.*
    --- F.3d ---, 2017 WL 24618 (9th Cir. Jan. 3, 2017)................................16

*Butler v. Sears, Roebuck & Co.*
    727 F.3d 796 (7th Cir. 2013) ................................................................17

*Carnegie v. Household Int'l, Inc.*
    376 F.3d 656 (7th Cir. 2004) ................................................................18

*Churchill Village, L.L.C. v. Gen. Elec.*
    361 F.3d 566 (9th Cir. 2004) ................................................................8, 12

*City of Detroit v. Grinnell Corp.*
    356 F. Supp. 1380 (S.D.N.Y. 1972)................................................................10

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) ................................................................8

*Cotter v. Lyft, Inc.*
    176 F. Supp. 3d 930 (N.D. Cal. 2016) ................................................................8

*Crawford v. Honig*
    37 F.3d 485 (9th Cir. 1995) ................................................................15

*Davis v. Astrue*
    250 F.R.D. 476 (N.D. Cal. 2008)................................................................13

*Delarosa v. Boiron, Inc.*
    275 F.R.D. 582 (C.D. Cal. Aug. 24, 2011) ................................................................17

*Ellis v. Naval Air Rework Facility*
    87 F.R.D. 15 (N.D. Cal. 1980)................................................................11

*General Tel. Co. of Southwest v. Falcon*
    457 U.S. 147 (1982)................................................................14

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ................................................................8, 14, 17, 18

*Harris v. Palm Springs Alpine Estates, Inc.*

iii

329 F.2d 909 (9th Cir. 1964) .......................................................................................14

*Harris v. Vector Mktg. Corp.*
No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) .......................9

*Haley v. Medtronic, Inc.*
169 F.R.D. 643 (C.D. Cal. 1996) ...............................................................................18

*In re Corrugated Container Antitrust Litig.*
643 F.2d 195 (5th Cir. 1981) ....................................................................................9

*In re Drexel Burnham Lambert Group, Inc.*
130 B.R. 910 (S.D.N.Y. 1991) .................................................................................12

*In re High-Tech Emp. Antitrust Litig.*
2014 U.S. Dist. LEXIS 110064, 2014 WL 3917126 (N.D. Cal. 2014) .......................8

*In re Toys R US FACTA Litig.*
295 F.R.D. 438 (C.D. Cal. 2014) ..............................................................................10

*In re United Energy Corp. Solar Power Modules Tax Shelter Investments Sec. Litig.*
122 F.R.D. 251 (C.D. Cal. 1988) ..............................................................................14

*Keegan v. Am. Honda Motor Co.*
284 F.R.D. 504 (C.D. Cal. 2012) .........................................................................16, 17

*Marisol A. v. Giuliani*
126 F.3d 372 (2d Cir. 1997).......................................................................................14

*Martel v. Valderamma*
2015 U.S. Dist. LEXIS 49830 (C.D. Cal. 2015)..........................................................10

*Mazza v. Am. Honda Motor Co.*
666 F.3d 581 (9th Cir. 2012) .....................................................................................14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
221 F.R.D. 523 (C.D. Cal. 2004) .........................................................................10, 11

*Officers for Justice v. Civil Serv. Com.*
688 F.2d 615 (9th Cir. 1982) .......................................................................................8

*Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.)*
516 F.3d 1095 (9th Cir. 2008) .....................................................................................8

*Rodriguez v. W. Publ'g Corp.*
563 F.3d 948 (9th Cir. 2009) ................................................................................10, 12

*Ruiz v. McKaskle*
724 F.2d 1149 (5th Cir. 1984) ...................................................................................12

*Satchell v. Fed. Express Corp.*
No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007)..............................9

*Spann v. J.C. Penney Corp.*
314 F.R.D. 312 (C.D. Cal. 2016) ................................................................................9

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 3:16-cv-03765-SI

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ................................................................15

*Torrisi v. Tucson Elec. Power Co.*
    8 F.3d 1370 (9th Cir. 1993) ................................................................12

*Tyson Foods, Inc. v. Bouaphakeo*
    136 S.Ct. 1036, 1045 (2016) ................................................................17

*Vinole v. Countrywide Home Loans, Inc.*
    571 F.3d 935 (9th Cir. 2009) ........................................................17, 18

*Wal-Mart Stores, Inc. v. Dukes*
    131 S. Ct. 2541 (2011) ................................................................13


Statutes and Regulations

12 C.F.R. § 1005.17 ................................................................................1

Fed. R. Civ. P. 23(a) ........................................................................13, 16

Fed. R. Civ. P. 23(a)(1) ................................................................13

Fed. R. Civ. P. 23(a)(1-4) ................................................................13

Fed. R. Civ. P. 23(a)(2) ................................................................13

Fed. R. Civ. P. 23(a)(3) ................................................................14

Fed. R. Civ. P. 23(a)(4) ................................................................15

Fed. R. Civ. P. 23(b) ........................................................................13, 16

Fed. R. Civ. P. 23(b)(3) ........................................................................13, 17

Fed. R. Civ. P. 23(e) ................................................................12

Fed. R. Civ. P. 23(e)(2) ................................................................8


Other Authority

5-23 Moore's Federal Practice - Civil § 23.22[1][b] ................................13

Manual for Complex Litigation, Second § 30.44 ....................................7

Manual for Complex Litigation, Fourth § 21.632 ..................................13

Newberg on Class Actions §11.41 (3d ed. 1992) ..................................9

# I.    <u>SUMMARY</u>

This is a putative class action alleging that Defendant Baxter Credit Union ("BCU" or "Defendant") charged overdraft fees based on the "available balance" in customer accounts (*i.e.*, a subset of the actual account balance from which money has been deducted by placing holds on funds earmarked for pending transactions which have not yet posted) rather than the money actually in the account (sometimes called the "ledger balance"), allegedly in violation of the terms of its contract governing the overdraft program for certain types of transactions.  In this brief, this is referred to as Plaintiff's "sufficient funds" theory.  Plaintiff also alleges that Defendant violated Regulation E, 12 C.F.R. § 1005.17 ("Reg. E"), by enrolling credit union members in its overdraft program for subject transactions without obtaining their affirmative consent to do so based on a complete and valid disclosure of the terms of the program. BCU disputes Plaintiff's contentions.

Following a mediation before the Honorable Edward A. Infante, the parties ultimately accepted a mediator's proposal from Judge Infante, and have now reached a proposed settlement of this matter, subject to this Honorable Court's review and approval.  Under the proposed Settlement Agreement,[1] BCU will pay $800,000, with no reversion of any residue to BCU, and also will forgive debts of $375,069 arising from uncollected overdraft fees imposed on class members when they had sufficient funds in their account to cover the transaction at issue. (*See* Exhibit 1 to the Declaration of Taras Kick ("Kick Decl."), "Settlement Agreement" ["SA"] ¶ 1(r) and ¶ 10.)    This is an overall settlement value of $1,175,069.  (SA ¶ 9.)  In addition to this monetary component, and as a result of this lawsuit, as of January 17, 2017, BCU caused additional disclosures regarding its overdraft fee practices to be sent to all members of Defendant. (SA ¶ 2.)  The settlement payment will be used to provide restitution to class members, pay the litigation costs, costs of notice and claims administration, attorney fees in the amount of twenty-five percent of the value of the settlement (subject to this Court's approval), and a service

---

[1] The Settlement Agreement has not yet been signed by the parties and attorneys, but is expected to be signed on Tuesday, September 5, 2017.  Plaintiff will file a fully executed version of the settlement agreement as soon as reasonably possible after it is signed.   Because the parties were ordered by this Court to file this motion for Preliminary Approval by today, September 1, Plaintiff did not want to wait until September 5 to file. Plaintiff does not expect any of the terms in the signed version to differ from the version attached as Exhibit 1 to the Declaration of Taras Kick, and certainly no substantial terms.

1  award to the class representative for her work on behalf of the class.

2         The manner of distribution of this proposed settlement is especially consumer friendly, as it does

3  not require any claims whatsoever to be made by the class members at all.  Specifically, payment will be

4  credited to the class members according to a formula which divides the net settlement fund by the total

5  improper overdraft charges for the relevant period and multiplies the resulting figure by an individual

6  class member's total improper overdraft charge.  (SA ¶ 8(d)(iv).)  This settlement compensation will be

7  directly deposited into existing customers' accounts, and will be distributed by check to the last known

8  address of all former members, without the need for any claim to be made by the class member.  (SA ¶

9  8(d)(v).)  Finally, any money that remains after this distribution process, rather than revert to Defendant,

10  instead will go to a 501(c)(3) non-profit, Public Citizen, an organization actively involved in protecting

11  consumer rights (if approved by this Court).  (SA ¶ 12.)

12         As discussed in more detail below, the value of the settlement represents approximately 63.57%

13  of the most likely recovery at trial, and every single class member will receive either a direct deposit or

14  check without having to make a claim, and also while avoiding for the class members all of the risks and

15  further costs that would have been incurred had this litigation continued.  (Kick Decl. ¶¶ 12.)

16         In sum, Plaintiff's counsel submits that the proposed settlement is an excellent one, and

17  respectfully requests that the Court preliminarily approve the settlement so that notice of a final approval

18  hearing may be disseminated to the class at this time.

19  **II.    RELEVANT FACTS**

20         The Complaint in this action was filed on July 5, 2016 (Docket No. 1 "Complaint"), alleging that

21  BCU had breached its contracts with its customers and violated Reg. E by charging overdraft fees for

22  transactions which, to be completed, required less money than was already in the customers' actual or

23  ledger balances.  (Complaint, ¶ 1, ¶¶ 22-26.)  On October 21, 2016, BCU filed a Motion to Dismiss the

24  Complaint (Docket No. 23), which Plaintiff opposed on November 10, 2016 (Docket No. 27), and in

25  support of which BCU filed a Reply on November 18, 2016.  (Docket No. 31).  The Court granted in

26  part and denied in part the Motion to Dismiss on January 12, 2017.  (Docket No. 40)  Plaintiff filed a

27  First Amended Complaint on January 27, 2017.  (Docket No. 46).  Thereafter, on February 10, 2017,

28  BCU filed a Motion to Dismiss the First Amended Complaint (Docket No. 48), which Plaintiff opposed

on March 3, 2017 (Docket No. 53), and in support of which BCU filed a Reply on March 10, 2017. (Docket No. 56).  Also on February 10, 2017, BCU filed a Motion to Strike Class Allegations, or Alternatively, to Deny Class Certification (Docket No. 49), which Plaintiff also opposed on March 3, 2017 (Docket No. 54), and in support of which BCU also filed a Reply on March 10, 2017.  (Docket No. 57).  On March 21, 2017, the Court ruled on both motions, denying the Motion to Dismiss and granting in part and denying in part the Motion to Strike Class Allegations, including striking Plaintiff's Regulation E class allegations "to the extent that they encompass a time period in excess of one year prior to filing of this action."  (Docket No. 61).

On October 18, 2016, Plaintiff propounded on BCU its first set of requests for production of documents, comprised of 100 categories of documents, its first set of special interrogatories, comprised of 25 special interrogatories, and its first set of requests for admissions, comprised of 25 requests for admission.  (Kick Decl. ¶ 7.)  Defendant responded to this discovery on December 12, 2016.  On May 8, 2017, BCU propounded on Plaintiff its first set of requests for production, comprised of 14 categories of documents, and its first set of special interrogatories, comprised of 12 interrogatories, to which Plaintiff responded on June 11, 2017.  (Kick Decl. ¶ 7.)  On June 2, 2017, Plaintiff took the deposition of BCU's corporate representative designated as most knowledgeable on overdraft issues, Douglas Wright, in Chicago, Illinois, and on June 14, 2017, BCU took the deposition of Plaintiff in Oakland, California. (Kick Decl. ¶ 7.)

The parties began settlement negotiations, which at all times were at arms' length, adversarial and devoid of any collusion.  (Kick Decl. ¶ 7.).  Pursuant to these negotiations, on June 19, 2017, the parties participated in a mediation before the Honorable Edward A. Infante (Ret.), which ultimately, on July 27, 2017, resulted in an agreement to settle the claims alleged in the First Amended Complaint through acceptance by both sides of a mediator's proposal made by Judge Infante.  (Kick Decl. ¶ 7.)  As part of the due diligence related to the settlement, Plaintiff's database expert, Arthur Olsen, reviewed and analyzed the results of an analysis performed by BCU's experts.  (*See* Declaration of Arthur Olsen ("Olsen Decl.") ¶¶ 6-10.)  Mr. Olsen has been able to confirm that BCU charged $1,848,315 in overdraft fees when there was enough money in the account to cover the transaction in question if "holds" on deposits or pending transactions were not taken into account, which is what the Plaintiff's "sufficient

funds" theory of the case is.  (Olsen Decl. ¶ 7.)   The total settlement value in this case of $1,175,069 represents approximately 63.57% of the total "sufficient funds" damages that have been identified. (Olsen Dec. ¶¶ 7-10.)

**III.    TERMS OF THE SETTLEMENT.**

    **1.    Class Definition.**

    The class includes any member of BCU who, (a) opened an account with BCU before November 2, 2015, on which date BCU revised its overdraft disclosures, and (b) between July 5, 2012 and January 28, 2017, was assessed an overdraft fee when the member had sufficient money in his or her ledger balance, but insufficient money in his or her available balance to complete the transaction that caused the fee.  (SA ¶ 1(e).)  The parties already have determined that there are approximately 17,453 members in the class.  (Olsen Decl. ¶ 8.)

    **2.    Monetary Payment.**

    The monetary terms of the settlement total $1,175,069.  Pursuant to the terms of the Settlement, Defendants will pay $800,000 into a settlement fund, and will waive $375,069 arising from uncollected overdraft fees imposed on class members. (SA ¶ 1(r) and ¶ 9.)   As the settlement does not require any claims to be made by the class members, they need not take any action to receive payment.  (SA ¶ 8(d)(v).) The settlement fund will also be used to pay claims and notice administration costs, and to pay for attorney fees and litigation costs as approved by this Court. (SA ¶ 8(d).)

    **3.    Change in Systems.**

    As a result of this action, on or about January 17, 2017, BCU sent additional disclosures regarding its overdraft practices to all members. (SA ¶ 2.)  BCU has also promised, pursuant to the settlement agreement, that it will continue to provide its members with these disclosures for three years from the effective date of the agreement. (SA ¶ 2.)

    **4.    Payments to Claimants.**

    No class member will need to make a claim of any sort.  Rather, if they do not opt out of the class, they will receive the money automatically, without having to do anything.  Specifically, class members who remain BCU members at the time of the distribution will receive a direct deposit to their checking accounts in the amount of the Individual Payment.  (SA ¶ 8(d)(v)(1).)  If they do not have a

1    checking account, but maintain another account at Defendant, then that account shall be credited.  (*Id.*).

2    Class Members who are not members of Defendant at the time of the distribution of the Net

3    Settlement Fund shall be sent a check by the claims administrator to the address to which the class

4    notice was sent, discussed *infra*, or at such other address as designated by the Class Member.  (SA ¶

5    8(d)(v)(2)).  The Class Member shall have one-hundred eighty days (180) to negotiate the check, after

6    which the payment will re-collect in the residue to be distributed to a *cy pres* recipient.  (*Id.*).

7    The amount paid to each class member shall be calculated as follows: (Net Settlement Fund / Total

8    Improper Overdraft Charges) x Total Improper Overdraft Charge per Class Member = Individual

9    Payment.  (SA ¶ 8(d)(iv)).  This means each class member will be treated fairly by receiving a

10   proportionate share of his or her "sufficient fund" overdraft fees refunded as a result of this settlement.

11       **5.**    ***Cy Pres* Distribution.**

12   Under no circumstances will any of the money from this settlement revert to BCU. (SA ¶ 8(e).)

13   Rather, if there is any residue which remains in the Net Settlement Fund after all class members who

14   made valid claims have been paid the amount to which they are entitled, the settlement provides for a *cy*

15   *pres* distribution of such residue, if approved by this Court, to Public Citizen, a non-profit organization

16   devoted to protecting consumer rights.  (SA ¶ 12.)

17       **6.**    **Class Notice.**

18   The Settlement Agreement provides that, for class members who are current members of BCU

19   and who have agreed to receive notices regarding their accounts from Defendant by email, BCU will

20   provide the claims administrator with the most recent email addresses it has for those class members, to

21   which the claims administrator will email the notice in a manner that is calculated to avoid being caught

22   and excluded by spam filters or other devices intended to block mass email.  (SA ¶ 5(b).)  For any

23   emails that are returned undeliverable, the claims administrator will use the best available databases to

24   obtain current email address information for those members, update its database with those addresses,

25   and resend the notice to them.  (*Id.*).

26   For those class members who are not currently members of BCU or who did not agree to receive

27   notices regarding their accounts by email, the claims administrator will mail those members the notice

28   by first class United States mail to their best available mailing addresses.  (SA ¶ 5(c).)  The claims

administrator will run the names and addresses provided by BCU through the National Change of Address Registry and update them as appropriate.  (*Id.*)  If a mailed notice is returned with forwarding address information, the claims administrator shall re-mail the notice to the forwarding address.  (*Id.*) For all mailed notices that are returned as undeliverable, the claims administrator shall use standard skip tracing devices to obtain forwarding address information and, if the skip tracing yields a different forwarding address, the claims administrator shall re-mail the notice to the address identified in the skip trace, as soon as reasonably practicable after the receipt of the returned mail.  (*Id.*)  Finally, the notice shall also be posted on a settlement website created by the claims administrator.  (SA ¶ 5(d).)

Plaintiff has requested bids for service from Kurtzman Carson Consultants LLC ("KCC") and Garden City Group LLC ("GCG") and will select the lower bidder as the claims administrator.  Using similar notice procedures in other overdraft fee class actions against credit unions, these same Plaintiff's counsel using one of these two claims administrators, have accomplished successful direct notice well in excess of 90%.  (Kick Decl. ¶ 10.)

### 7.   Opt Out Procedure.

Any class member who wishes to opt out can do so by mailing an exclusion letter by the Bar Date. (SA ¶ 13.)

### 8.   Opportunity to Object.

Under the proposed schedule for approval of this settlement, class members will have the opportunity to object from the time notice is mailed to them until fifteen days after class counsel will file the Motion for Final Approval, including for attorneys' fees and reimbursement of costs and expenses, both with this Honorable Court and also on the website created by the claims administrator for this settlement.  This means that every class member who so wishes will have at least 45 days to object since the Motion for Final Approval will not be filed sooner than 30 days after notice of this settlement goes out.  (SA¶¶ 1(a), 14.)

### 9.   Attorneys' Fees and Expenses

Attorneys' fees and costs are to be paid out of the settlement fund.  Class counsel will apply to this Court for attorneys' fees of twenty-five percent of the value of the settlement, or $293,767.25, plus reimbursement of reasonable litigation costs.  (SA ¶ 8(d)(i).)  Defendant has agreed not to oppose this

fee request.  (*Id.*)  Class counsel's lodestar to date is in excess of $225,000; accordingly, the fee request requires would represent a positive multiplier of only approximately 1.3x.  (Kick Decl. ¶ 14.)  Class counsel will present a declaration detailing on what work the time was spent, and will also make available, should the Court wish to inspect them, timesheets documenting this.  Class counsel to date have incurred litigation costs of $23,674, and have committed to the litigation costs in this matter, exclusive of the claims administrator, not to exceed $30,000. (Kick Decl. ¶ 14.)  Additionally, the firms of McCune Wright Arevalo and The Kick Law Firm, APC, the two proposed lead counsel in this matter, have agreed to share equally in the attorneys' fees, and this was disclosed to and approved by the proposed class representative Ms. Ramirez.  (*Id.*)

**10.    Release.**

In consideration for the settlement, class members are releasing all claims they made or could have made which in any way arise out of any allegations concerning alleged wrongdoing during the class period (consistent with the class definition) in the Action.  (SA ¶ 15.)

**IV.    ARGUMENT**

**A.    The Settlement Should Be Preliminarily Approved.**

**1.    Class Action Settlement Procedure.**

Class action settlements are subject to a three-step approval process.  First, the Court makes a preliminary evaluation of the fairness of the settlement.  If the Court determines that the settlement appears be fair, adequate and reasonable, then it should order the second step, that notice be given to the class members of a formal final settlement hearing.  At that formal hearing, the third step, evidence may be presented in support of and in opposition to the settlement. The federal Manual for Complex Litigation, Second ("MCL 2d"), summarizes the preliminary approval criteria as follows:

> If the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

(MCL 2d § 30.44.)

In addition to provisional certification of the proposed settlement class (*see* Section IV.B., *infra*),

the Rule 23(e) settlement approval procedure describes this three-step process for approval of a class

action settlement as follows:

1) Preliminary approval of the proposed settlement;

2) Dissemination of notice of the settlement to all affected class members; and

3) A formal fairness hearing, i.e. the final approval hearing, at which class members may be heard

regarding the settlement, and at which counsel may introduce evidence and present argument

concerning the fairness, adequacy, and reasonableness of the settlement.

By this motion for preliminary approval, Plaintiff seeks to accomplish the first two of these three

steps.  It is well-settled that, "[T]here is a strong judicial policy that favors settlements, particularly

where complex class action litigation is concerned."  *Pilkington v. Cardinal Health, Inc. (In re Syncor*

*ERISA Litig.)*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Officers for Justice v. Civil Serv. Com.*, 688

F.2d 615, 625 (9th Cir. 1982) ("Finally, it must not be overlooked that voluntary conciliation and

settlement are the preferred means of dispute resolution. This is especially true in complex class action

litigation…"); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs*

*v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).      In exercising discretion on whether to

approve a proposed class action settlement, a United States District Court should give "proper deference

to the private consensual decision of the parties…[T]he court's intrusion upon what is otherwise a

private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching

by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.

1998); *see also* Fed. R. Civ. P. 23(e)(2).

### 2.      The Standard for Granting Preliminary Approval.

"Some district courts . . . have stated that the relevant inquiry [on preliminary approval] is

whether the settlement 'falls within the range of possible approval' or 'within the range of

reasonableness.'"  *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (quoting *In re High-*

*Tech Emp. Antitrust Litig.*, 2014 U.S. Dist. LEXIS 110064, 2014 WL 3917126, at *3 (N.D. Cal. 2014)).

"At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if

the settlement: '(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.'" *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (quoting *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *23 (N.D. Cal. Apr. 29, 2011)).

In this case, the proposed settlement easily falls within the range of possible approval, and is fair to the entire class. All settlement negotiations between the parties not only were conducted at arms-length, and through experienced counsel, but also were conducted by highly experienced mediator Honorable Edward A. Infante (Ret.).  (Kick Decl ¶ 7.)  Courts have held that there is typically an initial presumption that a proposed settlement is fair and reasonable when it is the result of arms-length negotiations, particularly those conducted by an experienced mediator. *Harris*, 2011 U.S. Dist. LEXIS 48878 at *24 ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."); *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *see also* Newberg on Class Actions §11.41 at 11-88 (3d ed. 1992).  Moreover, if the terms of the settlement agreement seem to be fair, courts generally assume that negotiations were proper.  *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981); *see also* 4 Newberg § 11.41.

The proposed settlement meets the standards for preliminary approval because: (1) it is the product of serious informed non-collusive negotiations arrived at after civil motion practice, including discovery, by counsel very experienced in this sort of litigation pertaining to overdraft fees; (2) it has no obvious deficiencies because it provides relief that is appropriately tailored to the alleged harm and that is fair, reasonable and adequate given the risks of litigation; (3) it treats all class members equally; and, (4) it was negotiated by and recommended by experienced counsel, in the course of a mediation conducted by a highly regarded mediator.

### 3. The Settlement is Reasonable, Fair and Adequate Given the Strength of the Case and the Risks of Litigation.

As stated, the settlement provides for $1,175,069, represented by $800,000 of new money and a

forgiveness of uncollected overdraft fees of $375,069.  Although the Ninth Circuit does not require parties to formulaically quantify a settlement's benefit in comparison with possible litigation outcomes (*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)), nonetheless, based on database expert Mr. Olsen's calculation, Plaintiff's counsel believes that the most likely restitutionary number the class would have received in aggregate, had it prevailed at trial, is $1,848,315. (Olsen Decl. ¶  8; Kick Decl. ¶ 13.)  That represents the dollar amount of overdraft fees charged by Defendant when a class member had sufficient funds in the account to cover the transaction in question.  Accordingly, the proposed settlement represents approximately 63.57% of that number if taking into account the savings from the forgiveness of debts.  (*Id.*)

Courts in this Circuit have determined that settlements are, of course, reasonable where plaintiffs recover only part of their actual losses.  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)); *see also City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972) (a recovery of 3.2 % to 3.7 % of the amount sought is "well within the ball park"), aff'd in part, rev'd on other grounds, 495 F.2d 448 (2d Cir. 1974); *Martel v. Valderamma*, 2015 U.S. Dist. LEXIS 49830 * 17 (C.D. Cal. 2015) (approving a settlement of $75,000 when potential damages were $1.2 million, or about 6%); *In re Toys R US FACTA Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014) (approving settlement with *vouchers* (not cash) potentially worth a maximum of three percent (3%) *if all possible claims were actually made*, or $391.5 million aggregate voucher potential where the class could have recovered $13.05 billion).  In this case, as stated, there will not even be any claims process necessary for class members to receive their money, and none of the settlement funds will revert to Defendant.

Although Plaintiff does believe the liability in this case is strong, to continue with the case also would nonetheless be very expensive for both sides.  With regard to expected duration, an otherwise strong case could last for a very substantial time if the proposed settlement were not approved, and be extremely expensive to both sides.  Plaintiff's Counsel believes the likelihood for certification is strong, but there is always some risk in getting consumer class actions certified, even the ones which have the

strongest merits for certification.  Plaintiff, if successful in an adverse certification motion, would likely

next face a motion for summary judgment.  If Plaintiff defeated that motion, there would be an

expensive trial, and regardless of which party prevailed, there likely would be appellate practice, further

delaying any possible actual receipt of money by the class members.  The cost of attorneys' fees to both

sides from all of this additional activity would be substantial, likely at least hundreds of thousands of

dollars in additional attorney time and costs if the matter went all the way to verdict.  (Kick Decl. ¶ 13.)

Finally, this settlement in substance and structure is more favorable than the vast majority of

class action settlements.  The relief is in cash, not coupons.  There will be no claims necessary to be

made by class members. And, none of the money will revert to the Defendant.

### 4.     The Settlement Treats Class Members Equally.

Under the settlement, all class members are treated equally.  All class members for whom an

improper overdraft fee has been identified will receive their *pro rata* share based on their "sufficient

funds" overdraft fees from the settlement fund.

### 5.     The Recommendation of Experienced Counsel Supports Approval.

The judgment of competent counsel regarding the Settlement should be given significant weight.

*See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great

weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of

the underlying litigation."); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); *Boyd

v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel

should be given a presumption of reasonableness.").  Plaintiff's counsel are experienced in litigating and

settling consumer class actions and other complex matters. (McCune Decl. ¶¶ 1-5; Kick Decl. ¶¶ 2-4.)

They have investigated the factual and legal issues raised in this action, and are in favor of the

settlement.   (McCune Decl. ¶ 7; Kick Decl. ¶ 12.)

### 6.     The Proposed Forms of Notice and Notice Programs are Appropriate and Should Be Approved.

The Settlement Agreement is attached as Exhibit 1 to the Declaration of Taras Kick.  The

proposed notice is attached as Exhibit 1 to the Settlement Agreement.  The proposed form of notice and

notice program here fully comply with due process and Fed. R. Civ. P. 23.   Rule 23(e) of the Federal

Rules of Civil Procedure, which pertains to class action settlements, mandates that "notice of the proposed compromise shall be given to all members of the class in such manner as the court directs." Fed. R. Civ. P. 23(e).  The content of the notice to class members "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009).  In the context of a class settlement, the notice must also include a general description of the proposed settlement.  *See Churchill Village*, (9th Cir. 1999) 361 F.3d at 575; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  The notice should "fairly, accurately, and neutrally" "apprise [] prospective [class] members of the terms of the Proposed Settlement, the identity of persons entitled to participate in it and the options that are open to the [class] members in connection with the proceedings*."  In re Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910, 924 (S.D.N.Y. 1991), aff'd, 960 F.2d 285 (2d Cir. 1992).  *See also Ruiz v. McKaskle*, 724 F.2d 1149, 1153 (5th Cir. 1984) (approving district court's notice plan that "fairly recited the [settlement] agreement's terms and did not employ unnecessary legalisms.").

The proposed notice more than meets this standard, as it fairly states the terms of the settlement without resort to legalisms and provides the class members a clear avenue to object to the settlement, absent themselves from it, or to participate in the settlement by undertaking no action whatsoever.  (SA Ex. 1).  Further, the form of notice proposed to be used here is almost identical, with changes only specific to the specifics of the present case, as used successfully in other overdraft fee class actions involving credit unions.  (Kick Decl. ¶ 10.)

## 7.  The Class Representative Service Award.

As a part of the Motion for Final Approval, the proposed class representative will apply to this Court for a service award for her service in this case, and at that time she will detail further her work and involvement in the matter.  It is, of course, uncontroversial for a class representative to receive a service award, subject to Court approval. The class representative in this case was very helpful to the case's success, including taking time to sit for an adverse deposition, to prepare in advance for it, and to provide documents, and engage in numerous discussions with counsel, as well as other service. (Kick Decl. ¶ 8.).

**B.      The Proposed Settlement Class Should Be Certified.**

In granting preliminary approval of a proposed settlement, the Court must determine that the proposed settlement class is appropriate for certification. MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Class certification is proper if the proposed class, the proposed class representative, and the proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a).  Fed. R. Civ. P. 23(a)(1-4).  In addition to meeting the requirements of Rule 23(a), a plaintiff seeking class certification must also meet at least one of the three provisions of Rule 23(b).  Fed. R. Civ. P. 23(b). When a plaintiff seeks class certification under Rule 23(b)(3), the representative must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims.  Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16. Because Plaintiff meets all of the Rule 23(a) and 23(b)(3) prerequisites, certification of the proposed Class is proper.

**1.      The Requirement of Numerosity is Satisfied.**

The first prerequisite of class certification is numerosity, which requires "the class [be] so numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1). As a general rule, classes of 40 or more suffice. 5-23 Moore's Federal Practice - Civil § 23.22[1][b]. In this case, it is already known that the number of class members is 17,453.  (Olsen Decl. ¶ 8.)

**2.      The Requirement of Commonality is Satisfied.**

The second requirement for certification requires that "questions of law or fact common to the class" exist.  Fed. R. Civ. P. 23(a)(2).  Commonality is demonstrated when the claims of all class members "depend upon a common contention . . . that is capable of classwide resolution."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* "Even a single common question will do."  *Dukes*, 131 S. Ct. at 2556.  In other words, commonality exists where a question of law linking class members is substantially related to resolution of the litigation even where the individuals may not be identically situated.  *Davis v. Astrue*, 250 F.R.D. 476, 486 (N.D. Cal. 2008) ("Rule 23(a)(2) does not mandate that each member of the class be identically

1  situated, only that there be substantial questions of law or fact common to all.") (citing *Harris v. Palm*

2  *Springs Alpine Estates, Inc.*, 329 F.2d 909, 915 (9th Cir. 1964)).  The Ninth Circuit has found that

3  commonality is a "limited burden" in that only one common question is required.  *Mazza v. Am. Honda*

4  *Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

5        Here, not only do there exist common questions of law or fact, the common questions

6  predominate over any individual ones.  The theories underlying the class claims involve a uniform

7  overdraft fee practice.  It is undisputed that Defendant uniformly and systematically used the "available

8  balance" to determine whether to assess an overdraft fee on a transaction, as opposed to utilizing the

9  actual money in the account, i.e., the "ledger balance" or "actual balance".  Therefore, answering

10 whether Defendant breached its contract terms in doing that will by definition predominate for all class

11 members. Additionally, it is also undisputed that the operative terms regarding the overdraft fee

12 program, and specifically the balance calculation to be used to determine the assessment of overdraft

13 fees, as set forth in the Opt-In Contract (e.g. enough money in the account to cover a transaction) were

14 provided to all class members.  (First Amended Complaint "FAC" at ¶¶ 23, 24.)

15       As such, the commonality requirement is satisfied.

16                    **3.      The Requirement of Typicality is Satisfied.**

17       Rule 23 next requires that the class representative's claims be typical of those of the class

18 members.  Fed. R. Civ. P. 23(a)(3).  Like the commonality requirement, the typicality requirement is

19 "permissive" and requires only that the representative's claims be "reasonably co-extensive with those

20 of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  The

21 typicality requirement looks to whether "the claims of the class representative [are] typical of those of

22 the class, and [is] 'satisfied when each class member's claim arises from the same course of events, and

23 each class member makes similar legal arguments to prove the defendant's liability."  *Armstrong v.*

24 *Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.

25 1997).  Commonality and typicality "tend to merge," such that the factors supporting a finding of

26 commonality also support a finding of typicality.  *See General Tel. Co. of Southwest v. Falcon*, 457 U.S.

27 147, 157 (1982); *In re United Energy Corp. Solar Power Modules Tax Shelter Investments Sec. Litig.*,

28 122 F.R.D. 251, 256 (C.D. Cal. 1988).

1    Plaintiff's claims are not only typical of those of the other putative class members, they are

2    virtually indistinguishable.  There is no dispute that Plaintiff entered into the uniform and standardized

3    Opt-In Contract and that she was assessed overdraft fees when there was enough money in the account

4    (i.e., the ledger balance) to complete the requested transaction.  At a minimum, this occurred on January

5    16, 2016, when she was assessed a $29 overdraft fee on a transaction, despite the fact that her account

6    contained sufficient funds to complete the transaction.  (FAC ¶ 37.)  Plaintiff also alleges the same legal

7    theories as the rest of the class of breach of contract/breach of the covenant of good faith and fair

8    dealing and violation of Regulation E.  Therefore, typicality is satisfied.

9                    **4.        The Requirement of Adequate Representation is Satisfied.**

10    The final Rule 23(a) prerequisite requires that the proposed class representative has

11    and will continue to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

12    23(a)(4).  The Ninth Circuit has adopted a two-factor test to determine whether a plaintiff and his

13    counsel will adequately represent the interests of the class:  "(1) do the representative plaintiffs and their

14    counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs

15    and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327

16    F.3d 938, 957 (9th Cir. 2003); *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1995).  As with the

17    typicality requirement, adequacy requires that the interests of the named plaintiffs are aligned with the

18    unnamed class members to ensure that the class representative has an incentive to pursue and protect the

19    claims of the absent class members.  *See Amchem*, 521 U.S. at 626 n. 20, 117 S.Ct. 2231 ("The

20    adequacy-of-representation requirement 'tends to merge' with the commonality and typicality criteria of

21    Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is

22    economical and whether the named plaintiff's claim and the class claims are so interrelated

23    that the interests of the class members will be fairly and adequately protected in their absence.'")

24    Proposed Class counsel, Richard McCune of McCune Wright Arevalo, LLP, and Taras Kick of

25    The Kick Law Firm, APC, both have significant class action, litigation, and trial experience, are

26    competent, and have been competent in representing the Classes.  Both law firms representing the

27    putative class have extensive experience in consumer class actions, and in particular, expertise in

28    overdraft fee litigation.  (McCune Decl. at ¶¶ 2-5; Kick Decl. at ¶¶ 2-3.)  The interests of Plaintiff

Sondra Ramirez are not antagonistic to those of the other Class members; her interests are wholly aligned because she was charged overdraft fees when her account had a positive ledger balance. Further, she understands that she is pursuing this case on behalf of all class members similarly situated and understands she has a duty to protect the absent Class members.  (Kick Decl. at ¶ 8.)  She has actively participated in the litigation by frequently conferring with class counsel about the case and its status, assisting class counsel by gathering documents and other information, testifying at deposition, and being prepared and willing to testify at trial on behalf of the class if necessary.   (Kick Decl. at ¶ 8.)

### 5.        The (Former) Implied Requirement of Ascertainability is Satisfied.

In *Briseno v. ConAgra Foods, Inc.*, --- F.3d ---, 2017 WL 24618 (9th Cir. Jan. 3, 2017), the Ninth Circuit rejected the notion of a separate ascertainability requirement for certification in a class action. That recent holding would not really affect this case, since the actual 17,453 class members already have been identified.  (Olsen Decl. ¶ 8.)  Therefore, to whatever extent a court in this circuit might still review for some sort of implied "ascertainability," this is fully satisfied here, and not an issue: 17,543 accounts during the class period already have been identified as having been charged an overdraft fee which was not refunded when the account had sufficient funds in it to cover the transaction in question. (Olsen Decl. ¶ 8.)

### 6.        The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

Once the prerequisites of Rule 23(a) have been met, a plaintiff must also demonstrate that she satisfies the requirements of Rule 23(b), which requires that "the questions of law or fact common to class member predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Ms. Ramirez clearly satisfies both of these requirements.

### a.        Common Questions of Law and Fact Predominate.

The predominance requirement questions whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *Keegan v. Am. Honda Motor Co.*,

284 F.R.D. 504, 526 (C.D. Cal. 2012) (quoting *Hanlon*, 150 F.3d at 1022). But "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013), cert. denied, 134 S. Ct. 1277 (2014).

As the Supreme Court most recently confirmed:

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016). Both the contract claims and violation of Regulation E claims are subject to common proof, and would be subject to the same common proof if additional plaintiffs were added, and thus it would be more efficient to decide those common issues via the class action mechanism.

As BCU does not dispute its practice of charging fees based on the available balance while the ledger balance contains enough money to pay for the transaction, the only issue is whether the contract permitted it to do so. The common questions for claims for violation of Regulation E also predominate over any individualized issues. The Opt-In contract states, "An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." (FAC, Ex. 1, p. 2). The central liability question—whether the above language accurately describes "in a clear and readily understandable way" BCU's overdraft service, where overdraft fees are based on the available balance method as opposed to the ledger balance method—predominates over any individualized questions.

### b.     This Class Action is the Superior Method of Adjudication.

Rule 23(b)(3) also requires that a certifying court find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. Aug. 24, 2011) (quoting *Hanlon*, 150 F.3d at 1023.) "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* (quoting *Hanlon*, 150 F.3d at 1023.) Where each class member, pursuing an individual case, would burden the judiciary, this factor weighs in favor of certification. *See Vinole v.*

17

*Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy."). This factor also weighs in favor of certification where litigation costs would likely "dwarf potential recovery" if each class member litigated individually. *Hanlon*, 150 F.3d at 1023; *see also Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 652 (C.D. Cal. 1996)) ("[W]here the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action.").

As the Supreme Court stressed in *Amchem*, 521 U.S. at 617:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

As Judge Posner has stated, "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30*." Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). The desirability of concentrating the litigation in the present forum is illustrated by the fact that the amount of an individual damage instance is at most a $29 overdraft fee. There is no question that a large number of class members have suffered damages in an amount that could not justify or sustain individual lawsuits, and the only choice is between a class action and no action. Plaintiff is not aware of any additional suits instituted by or against the class members concerning the subject matter of the settlement. Superiority is met.

Accordingly, all factors weigh in favor of class certification.

## C.   SCHEDULE OF SETTLEMENT DATES.

The next steps in the settlement approval process are to notify the Class of the proposed Settlement, allow an opportunity for opt-outs and objections, and to hold a fairness hearing. Plaintiff proposes the following dates, assuming that preliminary approval is granted on September 22, 2017, and assuming such dates are acceptable to the docket of this Honorable Court:

| | |
|---|---|
| **Claims Administrator Sends Notice and Website Goes Live** | **October 6, 2017** |
| **Last day to Opt Out** | **November 6, 2017** |
| **Motion for Final Approval and Attorneys' Fees Filed with Court** | **November 9, 2017** |
| **Last day to Object** | **November 24, 2017** |

| Last day to file responses to objections and Class Counsel's and Defendants' Replies in Support of Motion for Final Approval and Attorneys' Fees | December 1, 2017 |
|---|---|
| Final Approval Hearing | December 22, 2017 |
| Filing by Claims Administrator of Final Report | Thirty Days After Time to Cash Checks has Expired |

## V.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court:  (1) preliminarily approve the Settlement; (2) approve the proposed plan of notice to the Class; (3) appoint the lower bidder of Kurtzman Carson Consulting or Garden City Group as the Notice Administrator; (4) set a schedule of dates as set forth above for further action on this Settlement Agreement, including a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed Settlement is fair, reasonable, and adequate and should be finally approved.

DATED:  September 1, 2017

Respectfully submitted,

McCUNE WRIGHT AREVALO LLP

THE KICK LAW FIRM, APC

BY:   */s/ Taras Kick*
McCUNE WRIGHT AREVALO LLP
Richard D. McCune
Jae (Eddie) K. Kim

The Kick Law Firm, APC
Taras Kick
Robert J. Dart
Attorneys for Plaintiff
Sondra Ramirez and the Putative Class

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 3:16-cv-03765-SI

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2017, a copy of the above PLAINTIFF SONDRA

RAMIREZ'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR

PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT was electronically filed using the

CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.


Respectfully submitted,


/s/ Robert Dart_____

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 3:16-cv-03765-SI