Richard D. McCune (State Bar No. 132124)
rdm@mccunewright.com
Jae K. Kim (State Bar No. 236805)
jkk@mccunewright.com
MCCUNE WRIGHT AREVALO LLP
3281 East Guasti Road, Suite 100
Ontario, California 91761
Telephone:  (909) 557-1250
Facsimile:  (909) 557 1275

THE KICK LAW FIRM, APC
Taras Kick (State Bar No. 143379)
(Taras@kicklawfirm.com)
Robert J. Dart (State Bar No. 264060)
(Robert@kicklawfirm.com)
815 Moraga Drive
Los Angeles, California 90049
Telephone:   (310) 395-2988
Facsimile:   (310) 395-2088

Attorneys for Plaintiff Sondra Ramirez
and the Conditionally Certified Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONDRA RAMIREZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BAXTER CREDIT UNION, and DOES 1-100,<br><br>Defendants. | Case No.:  3:16-cv-03765-SI<br><br>**PLAINTIFF SONDRA RAMIREZ'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARD OF ATTORNEY FEES AND COSTS, AND APPROVAL OF CLASS REPRESENTATIVE SERVICE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Assigned to Judge Susan Illston<br><br>Date:         December 22, 2017<br>Time:         9:00 a.m.<br>Courtroom:   1, 17th Floor |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 22, 2017, at 9:00 a.m. or as soon thereafter as the matter may be heard in the courtroom of the Honorable Susan Illston, 450 Golden Gate Avenue, San Francisco, CA, 94102, Plaintiff Sondra Ramirez will and hereby does move pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order granting final approval to the class action settlement in this matter, awarding attorneys' fees and costs, and approving the class representative service award.

## STATEMENT OF ISSUES TO BE DECIDED

By this motion, Plaintiffs move the Court for an Order:

1. Finally approving the settlement in this action;

2. Finally certifying a settlement class;

3. Awarding attorney fees in the amount of $293,767.25;

4. Awarding reimbursable litigation costs in the amount of $24,721.07;

5. Awarding claims administrator costs of $32,000; and,

6. Finally approving the class representative service award.

This Motion is based on the accompanying Memorandum of Points and Authorities, Declarations of Richard McCune, Taras Kick, Robert Weissman, Robert Dart, and Eric Kierkegaard of the claims administrator Garden City Group, LLC ("GCG") filed in support of this motion, and all exhibits thereto, the Declarations of Arthur Olsen and Sondra Ramirez filed in support of the motion for preliminary approval, all papers and records on file in this matter, and such other matter as the Court may allow.

Dated: November 9, 2017                    Respectfully submitted,

                                           MCCUNE WRIGHT AREVALO LLP

                                    BY:    _/s/ Taras Kick_____
                                           Richard D. McCune
                                           Jae (Eddie) K. Kim

                                           THE KICK LAW FIRM, APC
                                           Taras Kick
                                           Robert Dart
                                           Attorneys for Plaintiff Sondra Ramirez
                                           and the Conditionally Certified Class

# **TABLE OF CONTENTS**

I.   SUMMARY ........................................................................................................... 1

II.  BACKGROUND ................................................................................................. 2

    A.   The Settlement is a Very Good Result for the Class Members ................................ 2

    B.   Pertinent Procedural History ................................................................................. 3

    C.   Investigation and Discovery ................................................................................. 4

III. LEGAL ANALYSIS ........................................................................................... 5

    A.   The Settlement Should Be Finally Approved ......................................................... 5

        1.   The Strengths of Plaintiff's Case ................................................................. 6

        2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation ................................................................................................. 6

        3.   The Risk of Maintaining Class Action Status Throughout the Trial ............ 7

        4.   The Amount Offered in Settlement ............................................................. 7

        5.   The Extent of Discovery Completed, and the Stage of the Proceedings ...... 8

        6.   The Experience and Views of Counsel ........................................................ 9

        7.   The Presence of a Government Participant ................................................. 10

        8.   The Reaction of the Class Members to the Proposed Settlement ............... 10

    B.   The Requested Fee Award and Litigation Costs Should Be Approved .................. 11

    C.   The Proposed *Cy Pres* Recipient Should Be Approved ......................................... 15

    D.   The Class Representative's Service Award Should Be Approved ......................... 16

    E.   The Settlement Class Should Be Finally Certified ............................................... 16

        1.   The Requirement of Numerosity is Satisfied ............................................. 17

        2.   The Requirement of Commonality is Satisfied .......................................... 17

        3.   The Requirement of Typicality is Satisfied ............................................... 18

        4.   The Requirement of Adequate Representation is Satisfied ........................ 19

        5.   The (Former) Implied Requirement of Ascertainability is Satisfied .......... 20

        6.   The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ............................................................................................. 20

            a.   Common Questions of Law and Fact Predominate ........................ 20

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 3:16-cv-03765-SI

1              b.      This Class Action is the Superior Method of Adjudication............ 21

2  V.     Conclusion ........................................................................................................... 22

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 3:16-cv-03765-SI

1

## **TABLE OF AUTHORITIES**

2

*Cases*

3
*Amchem Prods. v. Windsor*
  521 U.S. 591 (1997) ...................................................................... 17, 19, 20, 22

4

5
*Armstrong v. Davis*
  275 F.3d 849 (9th Cir. 2001) .......................................................................... 18

6
*Boeing Co. v. Van Gemert*
  444 U.S. 472, 478 (1980) ................................................................................ 14

7

8
*Briseno v. ConAgra Foods, Inc.*
  --- F.3d ---, 2017 WL 24618 (9th Cir. Jan. 3, 2017) ....................................... 20

9
*Butler v. Sears, Roebuck & Co.*
  727 F.3d 796, 801 (7th Cir. 2013) ................................................................... 21

10

11
*Carnegie v. Household Int'l, Inc.*
  376 F.3d 656 (7th Cir. 2004) ........................................................................... 22

12
*Casey v. Orange County Credit Union*
  Orange County Superior Court No. 30-2013-00658493-CJBT-CXC ......... 10, 15

13
*Cotton v. Hinton*
  559 F.2d 1326 (5th Cir. 1977) ........................................................................... 9

14

15
*Crawford v. Honig*
  37 F.3d 485 (9th Cir. 1995) ............................................................................. 19

16
*Davis v. Astrue*
  250 F.R.D. 476 (N.D. Cal. 2008) ..................................................................... 17

17

18
*Delarosa v. Boiron, Inc.*
  275 F.R.D. 582 (C.D. Cal. Aug. 24, 2011) ...................................................... 21

19
*Detroit v. Grinnell Corp.*
  495 F.2d 448, 462 (2d Cir. 1974) ...................................................................... 8

20

21
*General Tel. Co. of Southwest v. Falcon*
  457 U.S. 147 (1982) ......................................................................................... 18

22
*Gutierrez v. Wells Fargo*
  730 F.Supp.2d 1080 (N.D. Cal. 2010) ............................................................... 4

23

24
*Gray v. Los Angeles Federal Credit Union*
  Los Angeles County Superior Court, Case No. BC625500 ........................... 9, 15

25
*Haley v. Medtronic, Inc.*
  169 F.R.D. 643 (C.D. Cal. 1996) ..................................................................... 22

26

27
*Hanlon v. Chrysler*
  150 F.3d 1011 (9th Cir. 1997) .................................................................. passim

28

*Harris v. Palm Springs Alpine Estates, Inc.*
    329 F.2d 909 (9th Cir. 1964) ........................................................................... 18

*Hernandez v. Point Loma Credit Union*
    San Diego County Superior Court, Case No. 37-2013-00053519........................ 9

*In re Checking Account Overdraft Litigation*
    MDL No. 2036 (S.D. Fla.) ............................................................................... 4

*In re Chicken Antitrust Litig.*
    669 F.2d 228 (5th Cir. 1982) ........................................................................... 8

*In re High-Tech Emple. Antitrust Litig.*
    2014 U.S. Dist. LEXIS 184827 (N.D. Cal. May 16, 2014)............................... 16

*In re Linerboard Antitrust Litig.*
    (E.D. Pa. 2004) 2004 U.S.Dist.LEXIS 10532 ................................................. 12

*In re Paine Webber Ltd. P'ships Litig.*
    171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................... 9

*In re Superior Beverage/Glass Container Consol. Pretrial*
    (N.D. Ill. 1990) 133 F.R.D. 119 ...................................................................... 12

*In re United Energy Corp. Solar Power Modules Tax Shelter Investments Sec. Litig.*
    122 F.R.D. 251 (C.D. Cal. 1988)..................................................................... 18

*In re Veritas Software Corp. Secs. Litig.*
    (N.D. Cal. 2005) 2005 U.S.Dist.LEXIS 30880 ............................................... 12

*Keegan v. Am. Honda Motor Co.*
    284 F.R.D. 504 (C.D. Cal. 2012)..................................................................... 21

*Kerr v. Screen Guild Extras, Inc.*
    526 F.2d 67 (9th Cir. 1976) ............................................................................ 12

*Lane v. Campus Federal Credit Union*
    Case No. 3:16-cv-00037 (M.D. La. 2017)............................................. 10, 11, 15

*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998) ...................................................................... 6, 8

*Manwaring v. Golden 1 Credit Union*
    Sacramento County Superior Court, Case No. 34-2013-00142667 ...................... 10, 15, 16

*Marisol A. v. Giuliani*
    126 F.3d 372 (2d Cir. 1997) ........................................................................... 18

*Mazza v. Am. Honda Motor Co.*
    666 F.3d 581 (9th Cir. 2012) ........................................................................... 18

*Moralez v. Kern Schools Federal Credit Union*
    Kern County Superior Court, Case No. BCV-15-100538 ............................... 10, 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004)......................................................... 6, 8, 9, 10

–iv–

*Officers for Justice v. Civil Service Com.*
    688 F.2d 615 (9th Cir. 1982) ............................................................................ 5, 6, 7

*Paul, Johnson, Alston & Hunt v. Graulty*
    886 F.2d 268 (9th Cir. 1989) ................................................................................... 11

*Petition of Hill*
    775 F.2d 1037 (9th Cir. 1985) ................................................................................. 11

*Rodriguez v. W. Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009) ..................................................................................... 9

*Singer v. Becton Dickinson & Co.*
    2009 U.S. Dist. LEXIS 114547 (S.D. Cal. Dec. 9, 2009) .................................. 16

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ................................................................................... 19

*Thayer v. Wells Fargo*
    (2001) 92 Cal.App.4th 819 ...................................................................................... 11

*Tyson Foods, Inc. v. Bouaphakeo*
    136 S.Ct. 1036 (2016) ............................................................................................... 21

*Vinole v. Countrywide Home Loans, Inc.*
    571 F.3d 935 (9th Cir. 2009) ................................................................................... 22

*Vizcaino v. Microsoft*
    (9th Cir. 2002) 290 F.3d 1043 ................................................................................ 12

*Wal-Mart Stores, Inc. v. Dukes*
    131 S. Ct. 2541 (2011) ............................................................................................. 17

**Statutes and Regulations**

ABA Model Code Prof. Responsibility, DR 2-106(B)(8) ............................................ 12

ABA Model Rules Prof. Conduct, rule 1.5(a)(8) ........................................................... 12

Fed. R. Civ. P. 23 ............................................................................................... passim

Rules Prof. Conduct, rule 4-200(B)(9) ........................................................................ 12

**Other Authority**

4 A Conte & H. Newberg, Newberg on Class Actions (4th ed. 2002) ............................ 6

5 Moore Federal Practice (Matthew Bender 3d. ed.) ................................................. 6, 8

5-23 Moore's Federal Practice – Civil .......................................................................... 17

Leubsdorf, *The Contingency Factor in Attorney Fee Awards* (1981) 90 Yale L.J. 473 ............... 12

–v–

1

Manual for Complex Litigation, Third (1995) ............................................................................... 10

Posner, Economic Analysis of Law (4th ed. 1992) ....................................................................... 12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 3:16-cv-03765-SI

# MEMORANDUM

## I.    SUMMARY.

This is a consumer class action alleging that Defendant Baxter Credit Union ("BCU" or "Defendant") charged overdraft fees based on the "available balance" in customer accounts (*i.e.*, the actual account balance less a deduction for any holds on pending debit transactions which have not actually posted and debited from the account) rather than the actual balance (*i.e.*, the money actually in the account, sometimes called the "ledger balance"), in alleged violation of the terms of its customer agreement.  Plaintiff also alleges in the operative complaint that Defendant violated 12 C.F.R. § 1005.17 for a period of one year, by enrolling credit union members in its overdraft program without appropriately obtaining their affirmative consent because the Opt-In Contract which Defendant was required to send to its customers did not accurately describe the overdraft program.  BCU has disputed Plaintiff's contentions throughout the case.

After law and motion practice and discovery into the underlying facts, and a mediation before the Honorable Edward A. Infante (Ret.) which ultimately resulted in both sides accepting Judge Infante's mediator's proposal, the parties presented a proposed settlement of this matter to which this Honorable Court granted preliminary approval.  This Court found, preliminarily, that the classes as defined in the Settlement Agreement meet all of the requirements for certification of a settlement class found in the Federal Rules of Civil Procedure and applicable case law (Preliminary Approval Order, ¶¶ 2, 7), that the proposed settlement falls within the range of reasonableness for potential final approval, and that the proposed settlement is the product of arm's length negotiations by experienced counsel after extensive litigation and discovery. (*Id.*, ¶ 8.)   This Court also found that the proposed notice plan to class members satisfied due process, and ordered that notice of the proposed settlement be served pursuant to it. (*Id.*, ¶ 9.)

The parties have complied with this Court's Order regarding notice, and Plaintiff therefore now presents the matter for final approval.  As evidenced by the contemporaneously filed declaration of Eric Kierkegaard of the claims administrator GCG, the direct notice program approved by this Court has been very successful.  Specifically, it was initiated on October 6, 2017, and 97.8% of the 20,138 class members successfully received the notice ordered by this Court.

–1–

1   (Declaration of Eric Kierkegaard [hereafter "GCG Decl."] ¶¶ 10, 12, 16, 20.)  Further, the deadline

2   for opting out of the proposed settlement was November 6, 2017, and not a single member of the

3   class has elected to opt out of the proposed settlement being presented for approval to this Court.

4   (GCG Decl. ¶ 23.)  Finally, although the time to object does not expire until November 24, 2017, as

5   of the date of this filing, there also have been no objections to the proposed settlement whatsoever.[1]

6   (GCG Decl. ¶ 24.)

7         In sum, the proposed settlement of this class action is a very good result for class members,

8   and class members' reaction to it to date has been very favorable.

9   **II.     BACKGROUND**

10         **A.     The Settlement is a Very Good Result for the Class Members**

11         The monetary terms of the settlement total $1,175,069.  Specifically, pursuant to the terms

12   of the settlement, Defendant will pay $800,000 into a settlement fund, and also will waive $375,069

13   arising from uncollected overdraft fees imposed on class members. (Settlement Agreement ¶ 1(r)

14   and ¶ 9.)  In addition to providing significant monetary benefits to the class, this amount will also be

15   used to reimburse the litigation costs, the costs of class notice and claims administration, attorneys'

16   fees, and a service award to the class representative. (Settlement Agreement, ¶ 8.)

17         Under the settlement, no money will revert to the Defendant.  (Settlement Agreement, ¶

18   8(d)(v).)  Payment will be credited to the class members according to an individualized formula

19   which takes into account the total improper overdraft charge per class member.  Specifically, the

20   formula divides the net settlement fund by the total improper overdraft charges for the relevant

21   period and multiplies the resulting figure by an individual class member's total improper overdraft

22   charge.  (Settlement Agreement, ¶ 8(d)(iii).)  As a result, each member will receive an award in

23   direct proportion to the size of her claim.  The settlement compensation will be directly deposited

24   into existing customers' accounts, and will be distributed by check to the last known address of all

25   former members.  (Settlement Agreement, ¶ (8)(d)(v).)  This means the class member literally has

26   

27   _____

28   [1] Per this Court's Order, Class Counsel will file with this Court an update after November 24, whether there were any objections, and if there were, a response to them.

to do nothing to receive this money, and since no class member has opted out, if this Court approves the proposed settlement, every class member will automatically receive money, either by direct deposit into their account (more than 90% of class members) or by having a check mailed to them. Finally, any money that remains after this distribution process, rather than revert to Defendant, instead will go to a 501(c)(3) non-profit, Public Citizen, an organization actively involved in protecting consumer rights (if approved by this Court).  (Settlement Agreement, ¶ 12.)

The $1,175,069 value of the settlement represents approximately 63.57% of the most likely non-interest restitutionary amount that could have been obtained at trial had the case been successful under Plaintiff's damage theory, while avoiding for the class members all of the risks and further litigation costs appurtenant with continuing.  (Declaration of Arthur Olsen filed in Support of the Motion for Preliminary Approval [hereafter "Olsen Decl."] ¶ 8; Declaration of Taras Kick [hereafter "Kick Decl."] ¶¶ 19, 20.)  This is discussed in more detail in Section III, *infra*.

**B.      Pertinent Procedural History**

The Complaint in this action was filed on July 5, 2016 (Docket No. 1 "Complaint"), alleging that BCU had breached its contracts with its customers and violated Reg. E by charging overdraft fees for transactions which, to be completed, required less money than was already in the customers' actual or ledger balances.  (Complaint, ¶ 1, ¶¶ 22-26.)  On October 21, 2016, BCU filed a Motion to Dismiss the Complaint (Docket No. 23), which Plaintiff opposed on November 10, 2016 (Docket No. 27), and in support of which BCU filed a Reply on November 18, 2016.  (Docket No. 31).  The Court granted in part and denied in part the Motion to Dismiss on January 12, 2017. (Docket No. 40).  Plaintiff filed a First Amended Complaint on January 27, 2017.  (Docket No. 46). Thereafter, on February 10, 2017, BCU filed a Motion to Dismiss the First Amended Complaint (Docket No. 48), which Plaintiff opposed on March 3, 2017 (Docket No. 53), and in support of which BCU filed a Reply on March 10, 2017.  (Docket No. 56).  Also on February 10, 2017, BCU filed a Motion to Strike Class Allegations, or Alternatively, to Deny Class Certification (Docket No. 49), which Plaintiff also opposed on March 3, 2017 (Docket No. 54), and in support of which BCU also filed a Reply on March 10, 2017.  (Docket No. 57).  On March 21, 2017, the Court ruled on both motions, denying the Motion to Dismiss and granting in part and denying in part the Motion to

Strike Class Allegations, including striking Plaintiff's Regulation E class allegations "to the extent that they encompass a time period in excess of one year prior to filing of this action" while preserving all other class allegations.  (Docket No. 61).

## C.      Investigation and Discovery

On October 18, 2016, Plaintiff propounded on BCU its first set of requests for production of documents, comprised of 100 categories of documents, its first set of special interrogatories, comprised of 25 special interrogatories, and its first set of requests for admissions, comprised of 25 requests for admission.  (Kick Decl. ¶ 10.)  Defendant responded to this discovery on December 12, 2016.  On May 8, 2017, BCU propounded on Plaintiff its first set of requests for production, comprised of 14 categories of documents, and its first set of special interrogatories, comprised of 12 interrogatories, to which Plaintiff responded on June 11, 2017.  (Kick Decl. ¶ 10.)  On June 2, 2017, Plaintiff took the deposition of BCU's corporate representative designated as most knowledgeable on overdraft issues, Douglas Wright, in Chicago, Illinois, and on June 14, 2017, BCU took the deposition of Plaintiff in Oakland, California.  (Kick Decl. ¶ 10.)

The parties' settlement negotiations at all times were at arm's length and adversarial.  (Kick Decl. ¶ 11.)  Pursuant to these negotiations, on June 19, 2017, the parties participated in a mediation before the Honorable Edward A. Infante (Ret.), which ultimately, on July 27, 2017, resulted in an agreement to settle the claims alleged in the First Amended Complaint through acceptance by both sides of a mediator's proposal made by Judge Infante.  (Kick Decl. ¶ 11.)  As part of the due diligence related to the settlement, Plaintiff's database expert, Arthur Olsen, reviewed and analyzed the results of an analysis performed by BCU's experts.  (Olsen Decl. ¶¶ 6-10.)  Mr. Olsen is considered to be one of the leading experts on overdraft fee database analysis, and has worked on overdraft litigation database analysis in such matters as the multidistrict litigation which took place in Florida (*In re Checking Account Overdraft Litigation* MDL No. 2036 (S.D. Fla.)), and in such matters as *Gutierrez v. Wells Fargo* 730 F.Supp.2d 1080 (N.D. Cal. 2010).  (Olsen Decl. ¶¶ 3-5.)  As a result of his analysis, Mr. Olsen was able to confirm that BCU charged $1,848,315 in overdraft fees when there was enough money in the account to cover the transaction in question if "holds" on deposits or pending transactions were not taken into account, which is what the Plaintiff's

1   "sufficient funds" theory of the case is.  (Olsen Decl. ¶ 7.)  The total value of the settlement in this

2   case of $1,175,069 therefore represents approximately 63.57% of the total "sufficient funds"

3   damages in this case.  (Kick Dec. ¶ 20.)

4   **III.    LEGAL ANALYSIS.**

5       **A.    The Settlement Should Be Finally Approved.**

6           Class Counsel believes this is a strong settlement which satisfies all criteria and scrutiny.

7   Further, it is worth noting that the Ninth Circuit has explained that "it must not be overlooked that

8   voluntary conciliation and settlement are the preferred means of dispute resolution," and that this is

9   "especially true in complex class action litigation."  *Officers for Justice v. Civil Service Com.*, 688

10  F.2d 615, 625 (9th Cir. 1982).  "Although Rule 23(e) is silent respecting the standard by which a

11  proposed settlement is to be evaluated, the universally applied standard is whether the settlement is

12  fundamentally fair, adequate and reasonable."  *Id.*; *see also Hanlon v. Chrysler*, 150 F.3d 1011,

13  1026 (9th Cir. 1997).  "It is the settlement taken as a whole, rather than the individual component

14  parts, that must be examined for overall fairness."  *Hanlon*, 150 F.3d at 1026.  In *Officers for*

15  *Justice*, the Ninth Circuit delineated the parameters of the district court's inquiry as follows:

16          [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated
            between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned
17          judgment that the agreement is not the product of fraud or overreaching by, or collusion
            between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable
18          and adequate to all concerned.  Therefore, the settlement or fairness hearing is not to be
            turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is
19          to reach any ultimate conclusions on the contested issues of fact and law which underlie the
            merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of
20          wasteful and expensive litigation that induce consensual settlements. The proposed
            settlement is not to be judged against a hypothetical or speculative measure of what *might*
            have been achieved by the negotiators.

21

22  688 F.2d at 625.

23          Perhaps more importantly, in *Officers for Justice*, the Ninth Circuit also first stated the

24  factors the court may consider, among others, in making its determination.  Those factors are:  (1)

25  the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

26  litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

27  in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the

28  experience and views of counsel; (7) the presence of a governmental participant; and (8) the

–5–

reaction of the class members to the proposed settlement.  *Id.*; *see also Hanlon*, 150 F.3d at 1026; *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice*, 688 F.2d at 625.

Plaintiff now reviews each of these 12 factors in the order presented in *Officers for Justice*.

### 1.     The Strengths of Plaintiff's Case.

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 5 Moore Federal Practice, § 23.85[2][b] (Matthew Bender 3d. ed.)). "However, in balancing, 'a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class.'" *Id.*  In considering the strength of Plaintiff's case, "[t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, [i]t has been held proper to take the bird in hand instead of a prospective flock in the bush."  *Id.* (internal quotation omitted).  While Plaintiff was able to withstand two motions to dismiss and a motion to strike, there are considerable risks to a continued litigation, as discussed in Class Counsel's declaration. (Kick Dec. ¶¶ 19, 20.) For example, if the settlement is not approved, Plaintiff will likely face a motion for summary judgment, as well as an adverse certification battle, both of which would have uncertain outcomes.  (Kick Dec. ¶ 19.) If the case survived and went to trial, Defendant would argue that the contractual language, which this Court found to be ambiguous, does not require all that Plaintiff believes it to require.  (Kick Dec. ¶ 19.)

Accordingly, this factor favors approval of the settlement.

### 2.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed. 2002). Here, continued litigation would be risky,

–6–

complex, lengthy, and expensive.  The risks of further litigation have been outlined above.  (Kick Dec. ¶¶ 19, 20.)  With regard to expected duration, as noted, an otherwise strong case could last for a very substantial time if the proposed settlement were not approved, and be extremely expensive to both sides.  (Kick Dec. ¶ 20.)  Plaintiff's Counsel believes the likelihood for certification is strong, but there is always some risk in getting consumer class actions certified, even the ones which have the strongest merits for certification. If the settlement is not approved, Plaintiff would likely next face a motion for summary judgment.  (Kick Dec. ¶ 19.) After an expensive trial, regardless of which party prevailed, there likely would be appellate practice, further delaying the receipt of actual funds by the class members.

Accordingly, this factor favors approval of the settlement.

### 3. The Risk of Maintaining Class Action Status Throughout the Trial.

Although the Court, in granting preliminary approval, provisionally certified the class in this case, the class has not been finally certified, nor has it been certified in an adverse situation. Although Plaintiff believes this case to be a strong one for certification, the outcome of an adverse motion for class certification would be uncertain, as would the outcome of a motion to decertify the class later down the road, should Defendant file one.  Additionally, of course, the Court could exercise its discretion at any time to reevaluate the appropriateness of class certification.

Accordingly, this factor favors approval of the settlement.

### 4. The Amount Offered in Settlement.

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628.  "Undoubtedly, the amount of the individual shares will be less than what some class members feel they deserve but, conversely, more than the defendants feel those individuals are entitled to.  This is precisely the stuff from which negotiated settlements are made." *Id*. The settlement of $1,175,069 is comprised of $800,000 in payment into the settlement fund, and a forgiveness of $375,069 in uncollected overdraft fees. This total represents 63.57% of the most likely expected recovery, should the class have prevailed at trial, which is an excellent result considering the risks and expense of further litigation.  (Kick Dec. ¶ 20.)  Further, each class

–7–

member is treated equally under this settlement, receiving a *pro rata* distribution in accordance with the number of wrongful overdraft fees he or she has incurred.  (Settlement Agreement, ¶ 8(d)(iii).)

Courts in this Circuit have determined that settlements are, of course, reasonable where plaintiffs recover only part of their actual losses.  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)); *see also City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972) (a recovery of 3.2 % to 3.7 % of the amount sought is "well within the ball park"), aff'd in part, rev'd on other grounds, 495 F.2d 448 (2d Cir. 1974); *Martel v. Valderamma*, 2015 U.S. Dist. LEXIS 49830 * 17 (C.D. Cal. 2015) (approving a settlement of $75,000 when potential damages were $1.2 million, or about 6%); *In re Toys R US FACTA Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014) (approving settlement with *vouchers* (not cash) potentially worth a maximum of three percent (3%) *if all possible claims were actually made*, or $391.5 million aggregate voucher potential where the class could have recovered $13.05 billion).  In this case, as stated, there will not even be any claims process necessary for class members to receive their money, and none of the settlement funds will revert to Defendant.

The proposed settlement is therefore well within the range of suitable.

### 5.    The Extent of Discovery Completed, and the Stage of the Proceedings.

"[A] settlement following sufficient discovery and genuine arm's-length negotiation is presumed fair."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528.  Even though "in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement" (*Linney*, 151 F.3d at 1239 (citing *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)), in this case substantial discovery was accomplished which has enabled the parties to explore the merits of the case and come to an understanding of its likelihood of success.  Specifically, Plaintiff has propounded on BCU, and obtained responses and documents responsive to 100 document requests, 25 special interrogatories, and 25 requests for admission.  (Kick Decl. ¶ 10.)  Meanwhile, BCU has

propounded on Plaintiff, and obtained responses and documents responsive to 14 document requests, and 12 interrogatories.  Additionally, Plaintiff has taken the deposition of BCU's corporate representative designated as most knowledgeable on overdraft issues, Douglas Wright, and BCU has taken Plaintiff's deposition.  (Kick Decl. ¶ 10.)  Further, BCU has provided Plaintiff's database expert, Arthur Olsen, an analysis of the class data, which Mr. Olsen has been able to verify in determining the class and class damages.  (Olsen Decl. 6-10.)  The facts of this case have been fully explored and uncovered.

As to the stage of the proceedings, Plaintiff has faced three major challenges to the merits of her case—two motions to dismiss and a motion to strike—which gave her the opportunity to examine BCU's arguments, craft her own, and weigh the strengths and weaknesses of her case, and ultimately reach an informed judgment of the likelihood of success on the merits.

### 6.      The Experience and Views of Counsel

"This circuit has long deferred to the private consensual decision of the parties."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Therefore, "'[g]reat weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'"  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (quoting *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)).  "Thus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'"  *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Class counsel is extremely experienced in consumer class actions, and specifically in overdraft fee class actions, and wholly support the settlement.  (McCune Decl. ¶¶ 2-5; Kick Decl. ¶¶ 2, 3.)  The experience of Class Counsel is set forth in the Declarations of Richard McCune and Taras Kick, filed herewith.  (*Id.*)  Together, Richard McCune and Taras Kick have over fifty years of litigation and trial experience.  (*Id.*)  Each has been appointed class counsel in numerous state and federal class actions, representing classes of consumers.  (*Id.*)  Together, they also have been appointed class counsel in numerous cases like this one representing consumers against financial institutions for wrongfully assessing overdraft fees, including:  *Hernandez v. Point Loma Credit Union*, San Diego County Superior Court, Case No. 37-2013-00053519 (appointed co-lead counsel

in California state consumer class action regarding alleged improper overdraft fees by a credit union, final approval granted of $1.5 million settlement in September 2017); *Lane v. Campus Federal Credit Union*, Case No. 3:16-cv-00037 (appointed co-lead counsel in consumer class action in the Middle District of Louisiana regarding alleged improper overdraft fees by a credit union, final approval granted in August 2017); *Gray v. Los Angeles Federal Credit Union*, Los Angeles County Superior Court, Case No. BC625500 (appointed co-lead counsel in California state consumer class action regarding alleged improper overdraft fees by a credit union, final approval granted in June 2017); *Moralez v. Kern Schools Federal Credit Union*, Kern County Superior Court, Case No. BCV-15-100538 (appointed co-lead counsel in California state consumer class action regarding alleged improper overdraft fees by a credit union, final approval granted in June 2017); *Manwaring v. Golden 1 Credit Union*, Sacramento County Superior Court, Case No. 34-2013-00142667 (appointed co-lead counsel in California state consumer class action regarding alleged improper overdraft fees by a credit union, final approval granted of $5 million settlement by the court in December 2015); and *Casey v. Orange County Credit Union*, Orange County Superior Court No. 30-2013-00658493-CJBT-CXC (appointed co-lead counsel in California state consumer class action regarding alleged improper overdraft fees by credit union, final approval granted by the court in May 2015). (*Id.*)

Class Counsel are in favor of the settlement, and believe it is a very good result for class members.  (McCune Decl. ¶¶ 20; Kick Decl. ¶¶ 11.)

Accordingly, this factor also weighs in favor of approval of the settlement.

### 7.    The Presence of a Government Participant.

No government entity is involved in this case.  Accordingly, this factor is likely neutral.

### 8.    The Reaction of the Class Members to the Proposed Settlement.

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (quoting 5 Moore's Federal Practice, § 23.85[2][d] (Matthew Bender 3d ed.)). ("In this regard, 'the representatives' views may be important in shaping the agreement and will usually be presented at the fairness hearing; they may be entitled to special weight because the representatives may have a better understanding of the

1    case than most members of the class.'" *Id*. (quoting Manual for Complex Litigation, Third, § 30.44

2    (1995)).

3            The reaction of the class members to the settlement to date has been overwhelmingly

4    positive.  As noted above, 97.8% of the approximate 20,000 class members successfully received

5    the notice ordered by this Court, and although the date to opt-out already has expired, not a single

6    class member has elected to opt out. (GCG Decl. ¶¶ 10, 12, 16, 20, 23.)  Furthermore, to date there

7    also has not been a single objection to the proposed settlement. (GCG Decl. ¶ 24.)

8            Accordingly, the very positive response to the proposed settlement by class members to date

9    also supports approval.

10           **B.**     **The Requested Fee Award and Litigation Costs Should Be Approved.**

11           Class counsel requests that the Court approve its application for attorneys' fees in the

12   amount of $293,767.25.  Even after substantial reductions based on billing judgment, Class Counsel

13   have a lodestar in this matter, *to date*, of $329,762.50.  (McCune Decl. ¶ 6; Kick Decl. ¶¶ 5, 6.)

14   Therefore, despite the risk of the case and the excellent result of the case and the time waiting to be

15   paid, the requested fee is actually only 89% of the lodestar incurred by Class Counsel in this case,

16   meaning rather than a positive multiplier as Class Counsel believes would be warranted in this case,

17   instead an approximate 11% reduction, and that omits future work still to occur.[2]

18           As this Court knows, a lodestar figure is calculated by multiplying the reasonable hours

19   expended by a reasonable hourly rate.  (*Wershba v. Apple Computer* (2001) 91 Cal.App.4th 224,

20   254.)  The Court may then adjust the lodestar using a multiplier.  (*Thayer v. Wells Fargo* (2001) 92

21   Cal.App.4th 819, 833.) Although Class Counsel believes there are a number of very valid reasons

22   for a positive multiplier in this case,[3] in this case Class Counsel, rather than receive a positive

23   _____

24   [2] Further, the same hourly rates sought by Class Counsel were approved most recently in federal
     court just yesterday in Illinois, in *Towner v. 1ˢᵗ MidAmerica Credit Union*, No. 3:15-cv-1162 (S.D.
     Ill. 2017), which also was an overdraft fee class action against a credit union, and prior to that in
25   Louisiana, in *Lane v. Campus Federal Credit Union*, Case No. 3:16-cv-00037, which also was an
     overdraft fee class action against a credit union. Further, Class Counsel's hourly rates have been
26   approved by numerous other courts, including many in similar overdraft fee class actions such as
     this one. (Kick Decl. ¶¶ 2, 4.)

27   [3] One such factor is contingent risk as explained by the California Supreme Court in *Ketchum v.
     Moses* (2001) 24 Cal.4ᵗʰ 1122, 1133: "A lawyer who both bears the risk of not being paid and
28   provides legal services is not receiving the fair market value of his work if he is paid only for the

1    multiplier, instead will actually be receiving 11% less than its lodestar if the requested fee is

2    awarded.

3            This is despite the fact that under California law it is uncontroversial that, "Multipliers can

4    range from 2 to 4 or even higher."  (*Wershba*, 91 Cal.App.4th at 255.)  The Ninth Circuit, and other

5    circuits, are in accord. (*Vizcaino v. Microsoft* (9th Cir. 2002) 290 F.3d 1043, 1050 (3.6x

6    multiplier);  *In re Veritas Software Corp. Secs. Litig.* (N.D. Cal. 2005) 2005 U.S.Dist.LEXIS 30880,

7    *43 (4x multiplier);  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.* (2nd Cir. 2005) 396 F.3d 96, 123

8    ("`multipliers of between 3 and 4.5 have become common'");  *In re Linerboard Antitrust Litig.*

9    (E.D. Pa. 2004) 2004 U.S.Dist.LEXIS 10532, *50 (noting that "during 2001-2003, the average

10   multiplier approved in common fund class actions was 4.35"); *In re Superior Beverage/Glass

11   Container Consol. Pretrial* (N.D. Ill. 1990) 133 F.R.D. 119, 131 (courts have characterized

12   multipliers of 3 or higher as average in many class actions).

13           Again, although a positive multiplier here is warranted but not being sought, a review of the

14   factors set out by the Ninth Circuit in *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir.

15   1976), are as follows:  (1) the time and labor required; (2) the novelty and difficulty of the issues

16   litigated; (3) the skill needed to perform properly the legal service; (4) the preclusion of other

17   employment due to the acceptance of work; (5) the customary fee; (6) whether the fee is fixed or

18   contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount at

19

20   _____

     second of these functions."  In *Ketchum*, the California Supreme Court went on to explain the
21   rationale behind contingent risk fee enhancements as follows: "The economic rationale for fee
     enhancement in contingency cases has been explained as follows: "A contingent fee must be higher
22   than a fee for the same legal services paid as they are performed. The contingent fee compensates
     the lawyer not only for the legal services he renders but for the loan of those services. The implicit
23   interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels
     the debt of the client to the lawyer) is much higher than that of conventional loans." (Posner,
24   Economic Analysis of Law (4th ed. 1992) pp. 534, 567.) "A lawyer who both bears the risk of not
     being paid and provides legal services is not receiving the fair market value of his work if he is paid
25   only for the second of these functions. If he is paid no more, competent counsel will be reluctant to
     accept fee award cases." (Leubsdorf, *The Contingency Factor in Attorney Fee Awards* (1981) 90
26   Yale L.J. 473, 480; see also *Rules Prof. Conduct, rule 4-200(B)(9)* [***385] [recognizing the
     contingent nature of attorney representation as an appropriate component in considering whether a
27   fee is reasonable]; ABA Model Code Prof. Responsibility, DR 2-106(B)(8) [same]; ABA Model
     Rules Prof. Conduct, rule 1.5(a)(8).)

28

1  issue and the results obtained; (9) the experience, reputation, and ability of the attorney or attorneys;

2  (10) the "undesirability" of the case; (11) the length and nature of the professional relationship

3  between the attorney and the client; and (12) awards in similar cases.

4  Here, as to the first factor, the Declarations of Richard McCune and Taras Kick set forth the

5  work performed by class counsel on all aspects of this case.  Class counsel performed considerable

6  work, overcoming two motions to dismiss and a motion to strike, propounding and responding to

7  written discovery, taking the deposition of Defendant's Person Most Knowledgeable on overdraft

8  issues, and defending Plaintiff's deposition.  (Kick Decl. 10, 11.)[4]  As to the second factor, the case

9  involved several difficult legal issues, including construction of the contractual language at issue

10  and interpreting Regulation E.  Accordingly, as to the third factor, this case required a high level of

11  skill.  As to the fourth factor, both The Kick Law Firm, APC and McCune Wright Arevalo, LLP,

12  turned down work they could have taken in order to pursue this case.  As to the fifth factor, the

13  customary fee in the Ninth Circuit in a successful case would apply a positive multiplier to the

14  lodestar, yet in this case not even the full lodestar is being sought. As to the sixth factor, the fee was

15  contingent, and accordingly Class Counsel took considerable risk in litigating this case.  As to the

16  seventh factor, no time limitations were imposed by the client or other circumstances.  As to the

17  eighth factor, the total amount of sufficient funds overdraft fees, and the amount that Plaintiff's

18  counsel believes it would have received had it prevailed at trial, is $1,848,315.  The result

19  obtained—$1,175,069—represents 63.57% of the amount at issue.  As to the ninth factor, the

20  experience, reputation, and ability of the attorneys which have represented the class in this case are

21  set forth in the Declarations of Richard McCune and Taras Kick.  Both firms and both lead

22  attorneys have considerable experience in consumer class action litigation, and specifically in

23  overdraft fee class action cases.  As to the tenth factor, this was not an undesirable case; however, it

24  did present the real risk of total loss for class counsel.  As to the eleventh factor, Ms. Ramirez and

25

26  [4] Class Counsel also will bring to the final approval hearing for *in camera* inspection an even more
detailed Declaration of Robert Dart further detailing all of the work performed, should the Court

27  wish to see this further detail, as well as timesheets for *in camera* inspection. Because Class
Counsel has other pending cases against this same defense counsel, they respectfully  request

28  further detail, if desired by the Court, be *in camera*.

1  class counsel have enjoyed a very productive working relationship, involving substantial

2  communication, with positive results.  As to the twelfth factor, as stated above with factor five, in a

3  successful case as such a positive multiplier would be expected on the lodestar yet in this case the

4  lodestar would be reduced by about 11%.

5      Finally, although there is no requirement of which Class Counsel is aware to need to satisfy

6  two separate different analysis for a fee award in a class action, the requested fee award, in addition

7  to being appropriate under a lodestar analysis as demonstrated above, is also appropriate under a

8  percentage-of-the-recovery analysis. The Ninth Circuit has allowed the use of the percentage-of-

9  the-recovery method to calculate attorneys' fees in common fund cases, where, as here "(1) the

10  class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the

11  fee can be shifted with some exactitude to those benefiting."  *Petition of Hill*, 775 F.2d 1037, 1041

12  (9th Cir. 1985).  Here Plaintiff has identified with precision the exact beneficiaries to the settlement

13  and the benefit that they will receive, and the fee is properly shifted to those beneficiaries.  There is

14  no argument that here "each member of [the] certified class has an undisputed and mathematically

15  ascertainable claim to part of a lump-sum recovered on his [or her] behalf."  *Boeing Co. v. Van*

16  *Gemert*, 444 U.S. 472, 478 (1980).

17      Under this analysis, the $293,767.25 being sought equals twenty-five percent of the overall

18  value settlement.   Although some say that 25% is a benchmark in the 9th Circuit under California

19  law for a percentage-of-benefit award, in reality, consumer class actions under California law, in

20  this dollar range, often award a higher percentage than that, often one-third (33-1/3%) of the

21  settlement amount or higher.  (see, *e.g.*, *Chavez, at* 66: "[e]mpirical studies show that, regardless

22  whether the percentage method or the lodestar method is used, fee awards in class actions average

23  around one-third of the recovery.")[1]

_____

24

25  [1] A non-exhaustive list of other cases awarding a percentage of benefit based on the common
    fund  of one-third or more include *Castaneda v. Burger King Corp.* (N.D. Cal. Jul. 12, 2010)2010

26  U.S.Dist.LEXIS 78299 [awarding 33%].); *In re California Indirect Purchases* (Cal. Super. Ct. Oct.
    22, 1998) No. 960886, 1998 WL 1031494, at *9 [setting forth a survey of awards approved by trial
    courts in common fund  cases, including *In re Milk Antitrust Litigation* (L.A.Sup.Ct.1998) Civ.

27  Case No. BC070061 (33⅓% award); ; *Carlson v. C.H. Robinson Worldwide* (D. Minn. 2006) 2006
    U.S.Dist.LEXIS 67108, *21-22 [35%]; *Worthington v. CDW* (S.D. Ohio 2006) 2006

28  U.S.Dist.LEXIS 32100, *22 ["Counsel's requested percentage of 38 and one-third of the total gross

-14-

1    In fact, in very similar overdraft fee class actions, Class Counsel has been awarded fees of

2    one-third of the settlement.  See, *e.g.*, *Lane v. Campus Federal Credit Union*, Case No. 3:16-cv-

3    00037 (final approval granted in August 2017, with fees awarded of one-third); *Gray v. Los Angeles*

4    *Federal Credit Union*, Los Angeles County Superior Court, Case No. BC625500 (final approval

5    granted in June 2017, with fees awarded of one-third); *Moralez v. Kern Schools Federal Credit*

6    *Union*, Kern County Superior Court, Case No. BCV-15-100538 (final approval granted in June

7    2017, with fees awarded of one-third); *Manwaring v. Golden 1 Credit Union*, Sacramento County

8    Superior Court, Case No. 34-2013-00142667 (final approval granted in December 2015, with fees

9    awarded of one-third);  *Casey v. Orange County Credit Union*, Orange County Superior Court No.

10   30-2013-00658493-CJ-BT-CXC (final approval granted by the court in May 2015, with fees

11   awarded of one-third).

12       In sum, although Class Counsel has a lodestar well in excess of $329,762.50 in this matter to

13   date, and this lodestar undoubtedly will increase further, Class Counsel seeks fees only of

14   $293,767.25, an approximate 11% reduction of the lodestar to date.[5]

15       **C.    The Proposed *Cy Pres* Recipient Should Be Approved.**

16       In the motion for preliminary approval of class action settlement, and in the settlement

17   agreement, counsel for Plaintiff stated that they would nominate Public Citizen, a non-profit which

18   represents the interests of consumers against corporations, including financial institutions (*see*

19   Declaration of Robert Weissman in Support of Motion for Final Approval ("Weissman Decl.") ¶ 4),

20   to be the *cy pres* recipient in this case.  Public Citizen has been involved in litigation in California,

21   and consistently engages in advocating for consumer rights, including with regard to financial

22   institutions. (Weissmann Decl. ¶¶ 4, 9, 10.)  It intends to use the money from the *cy pres* in this

23   matter, if approved by the Court, to support its research and advocacy supporting strong protections

24   ─────────────────────────

25   settlement"].)
     [5] With regard to costs, as detailed in the accompanying declarations of Richard McCune and Taras
26   Kick, for Class Counsel's litigation costs, although the Notice disseminated to class members stated
     that litigation costs to be reimbursed may be up to $30,000, Class Counsel seek a total of only
27   $24,721.07, and the costs constituting this amount are detailed in the declarations. (McCune Decl. ¶
     17; Kick Decl. ¶ 16.)  For claims administrator's costs, as approved in the Order granting
28   Preliminary Approval, GCG seeks the preliminarily approved amount of $32,000.

1   for consumers, including consumers in California.  (Weissmann Decl. ¶ 3).[6]

2          **D.     The Class Representative's Service Award Should Be Approved**

3          Although the Settlement Agreement states the class representative may seek up to $20,000

4   as a service award, and that is the dollar figure which was disseminated in the notice to class

5   members from which no class member elected to opt out, the proposed class representative seeks a

6   service award only of $10,000, half that amount.  This is well within the range of reasonableness

7   and should be approved.  *Singer v. Becton Dickinson & Co.*, No. 08-CV-821 - IEG (BLM), 2009

8   U.S. Dist. LEXIS 114547, at *3 (S.D. Cal. Dec. 9, 2009) ("[T]he $25,000.00 service enhancement

9   award to Plaintiff Singer appears to be reasonable in light of his efforts on behalf of the Settlement

10  Group Members."); *In re High-Tech Emple. Antitrust Litig.*, 2014 U.S. Dist. LEXIS 184827, at *13

11  (N.D. Cal. May 16, 2014) ($20,000 service awards "are fair and reasonable").

12         Not only was the class representative, Ms. Ramirez, at all times very enthusiastic and helpful

13  for the case of all class members, but she also worked actively in the case. Specifically, she

14  searched for and turned over documents for production; she spent about two days with Class

15  Counsel preparing for her deposition; she was available at all times and prepared to appear at trial if

16  requested; and through hard work, obtained an understanding of the issues in this case, and became

17  a valuable asset.  (Kick Decl. ¶ 17.)

18         Finally, when the class representative has been actually deposed as here, a service award of

19  $10,000 has been approved in all overdraft fee cases in which Class Counsel have worked together

20  when such was proposed. *See, e.g., Hernandez v. Point Loma Credit Union*, San Diego County

21  Superior Court, Case No. 37-2013-00053519 ($10,000); *Manwaring v. Golden 1 Credit Union*,

22  Sacramento County Superior Court, Case No. 34-2013-00142667 ($10,000).

23         **E.     The Settlement Class Should Be Finally Certified.**

24         Plaintiff seeks final certification of the following class: "any member of Defendant (i) who

25  opened up a consumer account with BCU before November 2, 2015 (when BCU revised its

26  _____

27  [6] Neither plaintiff, nor plaintiff's counsel, nor BCU, nor defense counsel will benefit financially in
    any way from the *cy pres* award.  Plaintiff's counsel are members of Public Citizen, but have no
    control over how Public Citizen spends its money.  Additionally, neither class counsel is on a list of
28  firms used by it for litigation.  (Kick Decl. ¶ 18; McCune Decl. ¶ 21.)

1   overdraft disclosures); and (ii) who, between July 5, 2012 and January 28, 2017, was assessed an

2   overdraft fee when the member had sufficient money in his or her ledger balance, but insufficient

3   money in his or her available balance to complete the transaction that caused the fee."

4          Class certification is proper if the proposed class, the proposed class representative, and the

5   proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of

6   representation requirements of Rule 23(a).  Fed. R. Civ. P. 23(a)(1-4).  In addition to meeting the

7   requirements of Rule 23(a), a plaintiff seeking class certification must also meet at least one of the

8   three provisions of Rule 23(b).  When a plaintiff seeks class certification under Rule 23(b)(3), the

9   representative must demonstrate that common questions of law or fact predominate over individual

10  issues and that a class action is superior to other methods of adjudicating the claims.  Fed. R. Civ. P.

11  23(b)(3); *Amchem Prods. v. Windsor*, 521 U.S. 591, 615-616 (1997).  Because Plaintiff meets all of

12  the Rule 23(a) and 23(b)(3) prerequisites, certification of the proposed Class is proper.

### 1.      The Requirement of Numerosity is Satisfied.

13

14         The first prerequisite of class certification is numerosity, which requires "the class [be] so

15  numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1). As a general rule,

16  classes of 40 or more suffice. 5-23 Moore's Federal Practice - Civil § 23.22[1][b]. In this case, the

17  number of class members is in the many thousands. (Olsen Decl. ¶ 8.)

### 2.      The Requirement of Commonality is Satisfied.

18

19         The second requirement for certification requires that "questions of law or fact common to

20  the class" exist.  Fed. R. Civ. P. 23(a)(2).  Commonality is demonstrated when the claims of all

21  class members "depend upon a common contention . . . that is capable of classwide resolution."

22  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  This requires that the determination

23  of the common question "will resolve an issue that is central to the validity of each one of the

24  claims in one stroke."  *Id*.  "Even a single common question will do."  *Dukes*, 131 S. Ct. at 2556.  In

25  other words, commonality exists where a question of law linking class members is substantially

26  related to resolution of the litigation even where the individuals may not be identically situated.

27  *Davis v. Astrue*, 250 F.R.D. 476, 486 (N.D. Cal. 2008) ("Rule 23(a)(2) does not mandate that each

28  member of the class be identically situated, only that there be substantial questions of law or fact

common to all.") (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 915 (9th Cir. 1964)).  The Ninth Circuit has found that commonality is a "limited burden" in that only one common question is required.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

Here, not only do there exist common questions of law or fact, the common questions predominate over any individual ones.  The theories underlying the class claims involve a uniform overdraft fee practice.  It is undisputed that Defendant uniformly and systematically used the "available balance" to determine whether to assess an overdraft fee on a transaction, as opposed to utilizing the actual money in the account, i.e., the "ledger balance" or "actual balance.  Additionally, it is also undisputed that the operative contractual terms regarding the overdraft fee program, and specifically the balance calculation to be used to determine the assessment of overdraft fees, as set forth in the Opt-In Contract (e.g. enough money in the account to cover a transaction) were iniform and provided to all class members.  Therefore, answering whether Defendant breached its contract terms in doing that will by definition predominate for all class members. (First Amended Complaint "FAC" at ¶¶ 23, 24.)

As such, the commonality requirement is satisfied.

### 3.    The Requirement of Typicality is Satisfied.

Rule 23 next requires that the class representative's claims be typical of those of the class members.  Fed. R. Civ. P. 23(a)(3).  Like the commonality requirement, the typicality requirement is "permissive" and requires only that the representative's claims be "reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  The typicality requirement looks to whether "the claims of the class representative [are] typical of those of the class, and [is] 'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  Commonality and typicality "tend to merge," such that the factors supporting a finding of commonality also support a finding of typicality.  *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982); *In re United Energy Corp. Solar Power Modules Tax Shelter Investments Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988).

–18–

Plaintiff's claims are not only typical of those of the other putative class members, they are virtually indistinguishable.  There is no dispute that Plaintiff entered into the uniform and standardized Opt-In Contract and that she was assessed overdraft fees when there was enough money in the account (i.e., the ledger balance) to complete the requested transaction.  At a minimum, this occurred on January 16, 2016, when she was assessed a $29 overdraft fee on a transaction, despite the fact that her account contained sufficient funds to complete the transaction.  (FAC ¶ 37.)  Plaintiff also alleges the same legal theories as the rest of the class of breach of contract/breach of the covenant of good faith and fair dealing and violation of Regulation E.  Therefore, typicality is satisfied.

### 4.    The Requirement of Adequate Representation is Satisfied.

The final Rule 23(a) prerequisite requires that the proposed class representative has and will continue to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit has adopted a two-factor test to determine whether a plaintiff and his counsel will adequately represent the interests of the class:  "(1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1995).  As with the typicality requirement, adequacy requires that the interests of the named plaintiffs are aligned with the unnamed class members to ensure that the class representative has an incentive to pursue and protect the claims of the absent class members.  *See Amchem*, 521 U.S. at 626 n. 20, 117 S.Ct. 2231 ("The adequacy-of-representation requirement 'tends to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is  economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'")

Proposed Class Counsel, Richard McCune of McCune Wright Arevalo, LLP, and Taras Kick of The Kick Law Firm, APC, both have significant class action, litigation, and trial experience, are competent, and have been competent in representing the class members.  Both law

firms representing the putative class have extensive experience in consumer class actions, and in particular, expertise in overdraft fee litigation.  (McCune Decl. at ¶¶ 2-5; Kick Decl. at ¶¶ 2-3.)  The interests of Plaintiff Sondra Ramirez are not antagonistic to those of the other Class members; her interests are wholly aligned because she was charged overdraft fees when her account had a positive ledger balance.  Further, she understands that she is pursuing this case on behalf of all class members similarly situated and understands she has a duty to protect the absent Class members. (Kick Decl. at ¶ 17.)  She has actively participated in the litigation by frequently conferring with class counsel about the case and its status, assisting class counsel by gathering documents and other information, testifying at deposition, and being prepared and willing to testify at trial on behalf of the class if necessary.   (Kick Decl. at ¶ 17.)

### 5.       The (Former) Implied Requirement of Ascertainability is Satisfied.

In *Briseno v. ConAgra Foods, Inc.*, --- F.3d ---, 2017 WL 24618 (9th Cir. Jan. 3, 2017), the Ninth Circuit rejected the notion of a separate ascertainability requirement for certification in a class action.  That recent holding would not really affect this case, since the actual class members already actually have been identified.  (Olsen Decl. ¶ 8.)  Therefore, to whatever extent a court in this circuit might still review for some sort of implied "ascertainability," this is fully satisfied here, and not an issue.

### 6.       The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

Once the prerequisites of Rule 23(a) have been met, a plaintiff must also demonstrate that she satisfies the requirements of Rule 23(b), which requires that "the questions of law or fact common to class member predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Ms. Ramirez clearly satisfies both of these requirements.

### a.       Common Questions of Law and Fact Predominate.

The predominance requirement questions whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a

1   representative rather than on an individual basis,' and the predominance test is satisfied." *Keegan v.*

2   *Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012) (quoting *Hanlon*, 150 F.3d at 1022).

3   But "common issues need only predominate, not outnumber individual issues." *Butler v. Sears,*

4   *Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013), cert. denied, 134 S. Ct. 1277 (2014).

5          As the Supreme Court most recently confirmed:

6          When one or more of the central issues in the action are common to the class and can be said
           to predominate, the action may be considered proper under Rule 23(b)(3) even though other
7          important matters will have to be tried separately, such as damages or some affirmative
           defenses peculiar to some individual class members.

8   *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016).  Both the contract claims and

9   violation of Regulation E claims are subject to common proof, and would be subject to the same

10  common proof if additional plaintiffs were added, and thus it would be more efficient to decide

11  those common issues via the class action mechanism.

12         As BCU does not dispute its practice of charging fees based on the available balance while

13  the ledger balance contains enough money to pay for the transaction, the only issue is whether the

14  contract permitted it to do so.  The common questions for claims for violation of Regulation E also

15  predominate over any individualized issues.  The Opt-In contract states, "An overdraft occurs when

16  you do not have enough money in your account to cover a transaction, but we pay it anyway."

17  (FAC, Ex. 1, p. 2).  The central liability question—whether the above language accurately describes

18  "in a clear and readily understandable way" BCU's overdraft service, where overdraft fees are

19  based on the available balance method as opposed to the ledger balance method—predominates

20  over any individualized questions.

21         Furthermore, Plaintiff's expert was able to fashion a class-wide algorithmic methodology to

22  determine damages for each class members.

23              **b.     This Class Action is the Superior Method of Adjudication.**

24         Rule 23(b)(3) also requires that a certifying court find that "a class action is

25  superior to other available methods for fairly and efficiently adjudicating the controversy."

26  Fed. R. Civ. P. 23(b)(3).  "The superiority inquiry under Rule 23(b)(3) requires determination of

27  whether the objectives of the particular class action procedure will be achieved in the particular

28  case." *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. Aug. 24, 2011) (quoting *Hanlon*,

–21–

1    150 F.3d at 1023.) "This determination necessarily involves a comparative evaluation of alternative

2    mechanisms of dispute resolution." *Id.* (quoting *Hanlon*, 150 F.3d at 1023.) Where each class

3    member, pursuing an individual case, would burden the judiciary, this factor weighs in favor of

4    certification. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The

5    overarching focus remains whether trial by class representation would further the goals of efficiency

6    and judicial economy."). This factor also weighs in favor of certification where litigation costs

7    would likely "dwarf potential recovery" if each class member litigated individually. *Hanlon*, 150

8    F.3d at 1023; *see also Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 652 (C.D. Cal. 1996)) ("[W]here

9    the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class

10   action.").

   As the Supreme Court stressed in *Amchem*, 521 U.S. at 617:

11   

12       The policy at the very core of the class action mechanism is to overcome the problem
         that small recoveries do not provide the incentive for any individual to bring a solo
13       action prosecuting his or her rights. A class action solves this problem by
         aggregating the relatively paltry potential recoveries into something worth someone's
14       (usually an attorney's) labor.

15   As Judge Posner has stated, "[t]he realistic alternative to a class action is not 17 million

16   individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30*." Carnegie v.*

17   *Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).  The desirability of concentrating the

18   litigation in the present forum is illustrated by the fact that the amount of an individual damage

19   instance is at most a $29 overdraft fee.  There is no question that a large number of class members

20   have suffered damages in an amount that could not justify or sustain individual lawsuits, and the

21   only choice is between a class action and no action.  Plaintiff is not aware of any additional suits

22   instituted by or against the class members concerning the subject matter of the settlement.

     Superiority is met.

23   Accordingly, all factors weigh in favor of class certification.

24   **V.     Conclusion.**

25       Plaintiff respectfully requests that the Court grant final approval of the settlement, the

26   request for attorney's fees and costs, the request for approval of class administrator expenses, and

27   ///

28

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 3:16-cv-03765-SI

1 the request for a service award to the class representative, in the entirety.

2 DATED:  November 9, 2017                    Respectfully submitted,

3                                                                 McCUNE WRIGHT AREVALO LLP

4                                                                 THE KICK LAW FIRM, APC

5

6                                                      BY:      /s/ Taras Kick
                                                                    MCCUNE WRIGHT AREVALO LLP
7                                                                 Richard D. McCune
                                                                    Jae (Eddie) K. Kim
8
                                                                    The Kick Law Firm, APC
9                                                                 Taras Kick
                                                                    Robert J. Dart
10                                                               Attorneys for Plaintiff
                                                                    Sondra Ramirez and the Conditionally Certified Class
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 3:16-cv-03765-SI

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on November 9, 2017, a copy of the above PLAINTIFF SONDRA

3

RAMIREZ'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS

4

ACTION SETTLEMENT, AWARD OF ATTORNEY FEES AND COSTS, AND APPROVAL OF

5

CLASS REPRESENTATIVE SERVICE AWARD; MEMORANDUM OF POINTS AND

6

AUTHORITIES IN SUPPORT was electronically filed using the CM/ECF system which will send

7

a notice of electronic filing to all CM/ECF participants.

8

9

10

Respectfully submitted,

11

/s/ Robert Dart_____

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 3:16-cv-03765-SI